LESTER G. OSTROV
lostrov@lgolaw.com
LESTER G. OSTROV,
PROFESSIONAL CORP.
5757 Wilshire Blvd.
Penthouse 5
Los Angeles, CA 90036
Telephone: (323) 424-3440
Facsimile: (323) 424-3468

THOMAS A. WOODLEY
MOLLY A. ELKIN
WILLIAM W. LI
taw@wmlaborlaw.com
mae@wmlaborlaw.com
wwl@wmlaborlaw.com
WOODLEY & McGILLIVARY
1101 VERMONT AVE, N.W.
SUITE 1000
WASHINGTON, DC 20005
Telephone: (202) 833-8855
Facsimile: (202) 452-1090

Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JAMES CARSON, ET AL.,

      Plaintiffs,

  vs.

CITY OF LOS ANGELES,

     Defendant.

CASE NO. CV15-07057-JFW (KLSx)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**Date: September 19, 2016,
Time: 1:30 PM**

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Courtroom 16**

**Pre-trial Hearing Date:**
**October 7, 2016, 10:00 AM**
**Trial Date: October 18, 2016, 8:30 AM**

Table of Contents

I.      Introduction..............................................................................1

II.     Standard of Review....................................................................2

III.    Argument ..................................................................................3

    A.    Defendant Failed to Apply the Statutory Test to Determine the
        EMS Captains' Primary Duty, and the Test Shows that EMS
        Captains Are Not Exempt Employees................................................3

        1.   The EMS Captains' Primary Duty is Emergency
            Response, and Defendant's Allegedly Undisputed Facts
            Are Disputed, Misleading, and Inapposite...................................3

            a)   EMS Captains' Non-exempt Duty of Emergency
                Response Is of Paramount Importance Compared
                to any Other Duties..................................................4

                (1)   The City's Comparison of One EMS
                      Captain to All Rescue Ambulances in a
                      Battalion Is Not a Legitimate Comparison ............4

                (2)   EMS Captains Are in the First Wave of
                      Response........................................................7

            b)   The City Misinterprets 29 C.F.R. 541.3(b) and
                Conflates "Directing Operations" with "Directing
                Paramedics" on Scene ........................................8

            c)   The City Has Not Tried to Quantify How Much
                Time the EMS Captains Spend Performing
                "Exempt" Work ....................................................11

                (1)   Restocking and Driving to Restock Is Non
                      Exempt Work ....................................................12

                  (2)   EMS Captains' Training Is Non-exempt
                      Work ................................................................13

                  (3)   Fact Finding and Conducting Investigations
                      Is Non-exempt Work ........................................14

                  (4)   EMS Captains Spend Less than 0.34% of
                      Their Time on Performance Evaluations. .............14

    B.    EMS Captains Do Not Customarily and Regularly Perform
        Exempt Executive Duties ................................................................15

        1.   EMS Captains Do Not Manage the Emergency Medical
            Services Subdivision....................................................15

         2.   EMS Captains Do Not Customarily or Regularly Direct
            the Work of Two or More Employees ........................................16

i

C.  EMS Captains Do Not Satisfy the Administrative Duties Tests...........17

    1.  EMS Captains' Primary Duty Is Not Office or Non-Manual Work Directly Related to the Management of the Medical Services Subdivision.........................................17

    2.  EMS Captains' Primary Duty Does Not Include Exercise of Discretion and Independent Judgment ....................................18

D.  The City Cannot Prove that the EMS Captains' Primary Duty Includes Office or Non-Manual Work .....................................20

E.  The City's Abysmal Track Record of FLSA Violations Strongly Supports an Award of Liquidated Damages and a Third Year of Backpay .........................................................21

F.  The City Has Not Demonstrated Its Subjective Good Faith and Objective Reasonableness to Avoid Mandatory Liquidated Damages .............................................................22

    1.  The City Failed to Determine Its FLSA Obligations and Take Active Steps to Comply with Them...................................22

    2.  Subjective Good Faith Requires an Employer to Take Action To Determine Its FLSA Obligations..............................23

G.  Plaintiffs Are Entitled to a Three Year Statute of Limitations for Recovering Backpay.........................................................24

IV.  Conclusion ...........................................................................25

1
2

Table of Authorities

Cases

*Adam v. United States*, 26 Cl. Ct. 782, 792-93 (1992)…………………………....18

*Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003) .................................... 22, 24, 25

*Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388 (1960) ............................................1, 3

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596 (E.D. Tenn. 2013) . 10, 12, 13

*Bothell v. Phase Metrics, Inc*., 299 F.3d 1120 (9th Cir. 2002)...................................3

*Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) ...................................22

*Calderon v. Geico*, 809 F.3d 111 (4th Cir. 2015).....................................................14

*Chao v. A-One Med. Servs.*, 346 F.3d 908 (9th Cir. 2003) .............................. 22, 25

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005).............................3

*Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285 (10th Cir. 1994)8

*EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), cert. denied, 474 U.S. 902 (1985).................................................................................................22

*Goulas v. Lagreca*, No. 12-898, 2013 U.S. Dist. LEXIS 80368 (E.D. La. 2013) ...18

*Haas v. Verizon N.Y., Inc.,* 2015 U.S. Dist. LEXIS 107842, *19-20 (S.D.N.Y. 2015) .................................................................................................................... 13, 18

*Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014).................. 1, 21, 23, 25

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980)...................................3

*Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822 (10th Cir. 2012)............. 3, 9, 10

*Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232 (D.N.M. 2013)…..10

*Masters v. Huntington*, 800 F. Supp. 363 (S.D.W.V. 1992) .....................................12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U. S. 574 (1986).....3

*McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997 (8th Cir 2003)19

*McLaughlin v. Richland Shoe Company,* 486 U.S. 128 (1988)..............................24

*Morrison*, 2016 U.S. App. LEXIS 11211 at *27............................................. passim

*Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011)………………………..8

*Mumby v. Pure Energy Servs. (USA), Inc*., 636 F.3d 1266 (10th Cir. 2011) ...........24

iii

*Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 U.S. Dist. LEXIS 81831, at *14
  (C.D. Cal. Aug. 25, 2008)................................................................20

*Smith v. Jackson*, 954 F.2d 296 (5th Cir. 1992) .........................................9, 10

*United States v. Bush*, 626 F.3d 527 (10th Cir. 2010) ...............................23

*United States v. Kenney*, 911 F. 2d 315 (9th Cir. 1990) ...........................24

Statutes

29 U.S.C. §255(a) ..............................................................................2, 24

29 U.S.C. §260..................................................................................2, 22

Regulations

29 C.F.R. § 541.201(a) ..........................................................................17

29 C.F.R. § 541.202 ...............................................................................19

29 C.F.R. § 541.700(a) ............................................................................4

29 C.F.R. §541.3 ....................................................................................12

29 C.F.R. §541.3(b) .........................................................................passim

29 C.F.R. §790.15 ..................................................................................23

29 C.F.R. 541.100(a)(2) .........................................................................16

29 C.F.R. 541.202(b)..............................................................................20

29 C.F.R. 541.203(j)...............................................................................19

29 C.F.R. 541.3(a) ..................................................................................18

29 C.F.R.§ 541.202(e).............................................................................19

29 C.F.R.541.202(a) ...............................................................................19

69 Fed. Reg. 22122 .........................................................................passim

iv

## I.     Introduction

Ignoring the undisputed record, the City of Los Angeles contends that the plaintiff EMS Captains are not first responders, and that they are exempt pursuant to the highly compensated exemption to the Fair Labor Standards Act ("FLSA"). In making this confounding assertion, the City ignores the Department of Labor's regulations regarding the non-exempt status of emergency responders whose duties include on-scene supervision, the requirements of the FLSA in determining an employee's primary duty, the binding testimony from the City's Rule 30(b)(6) witness that emergency response is the EMS Captains' primary job duty, and the fact that EMS Captains risk life and limb daily in responding to emergency calls to provide emergency medical services to patients in Los Angeles.

The regulations promulgated by the Department of Labor (DOL) in 2004, 29 C.F.R. §541.3(b), are directed specifically at emergency response supervisors, who had previously been subject to misclassification as exempt employees. The regulations unambiguously state that the Section 13(a)(1) FLSA exemptions "***do not apply*** to . . . paramedics, emergency medical technicians, [or] ambulance personnel . . . , ***regardless of rank or pay level***, who perform such work as . . . rescuing fire, crime or accident victims[.]" 29 C.F.R. §541.3(b) (emphasis added). While the City obfuscates through misleading statistics and a list of allegedly managerial tasks that are, in actuality, either non-exempt work or comprise a miniscule portion of the plaintiffs' time and effort, plaintiffs' most important and primary job duty is emergency response work; EMS Captains are part of the initial group of Fire Department employees dispatched to the scene of incidents, and respond to provide emergency aid to victims at the scene of incidents.

The City bears the burden of demonstrating that the Captains "plainly and unmistakably" fit within the exemptions claimed. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1256 (9th Cir.

1

1  2014), *cert. denied*, 2014 U.S. Lexis 5524. The City fails to set forth facts to support

2  such a finding, and the Court should deny its motion for summary judgment. Indeed,

3  the facts demonstrate that the claimed highly compensated employee exemption to

4  the FLSA cannot apply to the EMS Captains, and the Court should grant plaintiffs'

5  motion for partial summary judgment on the same issue.[1]

6      In seeking summary judgment in an attempt to avoid mandatory liquidated

7  damages and a third year of backpay, the City makes little effort to demonstrate how

8  its acts in violation of the FLSA were in good faith or were objectively reasonable

9  under 29 U.S.C. §260, or how its acts were not willful or reckless under 29 U.S.C.

10 §255(a). Indeed, the City's only defense is that it consulted with attorneys. But the

11 evidence shows that the City:  1) provided incomplete and inaccurate information to

12 its attorneys; 2) provided its attorneys with the conclusions it wanted, for example

13 telling its attorneys that the EMS Captains are not first responders; 3) ignored the

14 attorneys' advice that EMS Captains are not partially exempt under 29 U.S.C. §

15 207(k) as fire fighters; and 4) never relied on advice of counsel because the City

16 never treated the EMS Captains as highly compensated FLSA exempt employees,

17 instead waiting until the instant litigation to raise the highly compensated exemption

18 as a defense to liability. Instead, the City's purposeful acts to ignore its own counsel

19 demonstrate that its acts violated the FLSA in bad faith and were objectively

20 unreasonable. These undisputed facts do not support the City's arguments, and the

21 Court should grant plaintiffs' motion for partial summary judgment on the same

22 issues.

23 **II.    Standard of Review**

24      When evaluating a motion for summary judgment, the facts are to be

25 construed in a light most favorable to the non-moving party. *Matsushita Electric*

---

26

27 [1] To avoid undue repetition, plaintiffs incorporate by reference the papers
   previously filed in support of their motion for partial summary judgment.

28

1   *Industrial Co. v. Zenith Radio Corp.*, 475 U. S. 574, 587 (1986). The district court

2   must not "resolve factual disputes by weighing conflicting evidence . . . since it is

3   the province of the jury to assess the probative value of the evidence." *Kennett-*

4   *Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980).

5   **III.    Argument**

6       **A.    Defendant Failed to Apply the Statutory Test to Determine the**

7           **EMS Captains' Primary Duty, and the Test Shows that EMS**

8           **Captains Are Not Exempt Employees**

9       FLSA exemptions are to be "narrowly construed against the employer

10  asserting them" and their application limited to circumstances "plainly and

11  unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S.

12  388, 392 (1960); *Cleveland v. City of Los Angeles*, 420 F.3d 981, 998 (9th Cir. 2005),

13  *cert. denied*, 546 U.S. 1176 (2006). "An employer who claims an exemption from

14  the FLSA has the burden of showing that the exemption applies." *Bothell v. Phase*

15  *Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002).

16      Because the determination of an employee's primary duty is a factual one,

17  summary judgment is appropriate only if all reasonable factfinders would conclude

18  that the alleged "managerial" portion of plaintiffs' job is their primary duty. *Maestas*

19  *v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012). As a result, the City

20  bears the burden of producing evidence "that "plainly and unmistakably" shows that

21  its position is correct . . . any gaps in the evidence work in plaintiffs' favor." *See id.*

22  The City cannot meet its heavy burden.

23      **1.    The EMS Captains' Primary Duty is Emergency Response,**

24          **and Defendant's Allegedly Undisputed Facts Are Disputed,**

25          **Misleading, and Inapposite**

26      Defendant ***admits*** that if the primary duty of the EMS Captains is emergency

27  response, the highly compensated exemption does not apply. Yet the City failed to

28  use DOL's standard to determine the EMS Captains' primary duty. Applying that

1   standard, the only conclusion a reasonable fact finder could make is that emergency

2   response is the EMS Captains' primary duty. The DOL lists four non-exhaustive

3   factors in determining an employee's primary duty:

4          (1) "the relative importance of the exempt duties as compared with other

5          types of duties;" (2) "the amount of time spent performing exempt work;" (3)

6          "the employee's relative freedom from direct supervision;" and (4) "the

7          relationship between the employee's salary and the wages paid to other

8          employees for the kind of nonexempt work performed by the employee."

9   29 C.F.R. § 541.700(a). Rather than apply these factors to the EMS Captains' day-

10  to-day job duties, the City makes the untenable conclusion that the EMS Captains'

11  primary duty is to "manage the emergency medical services subdivision of the

12  LAFD." City's Notice of Motion and Motion, Document 51 ("Doc. No. 51"). This is

13  not one of the EMS Captains' duties at all, let alone their primary duty.

14          a)      **EMS Captains' Non-exempt Duty of Emergency Response Is**

15                  **of Paramount Importance Compared to any Other Duties**

16          The City attempts to diminish the impact and importance of EMS Captains'

17  emergency response work in two ways:  (1) the City argues that EMS Captains are

18  not dispatched frequently compared to the rescue ambulances in their battalions; and

19  (2) the City argues that the EMS Captains are often the last to arrive on scene and

20  are not relied upon to provide hands-on work. The City also argues that when

21  responding, EMS Captains direct operations on scene and are therefore not "first

22  responders." The City's argument is illogical, unsupported, and misstates the law.

23          (1)     **The City's Comparison of One EMS Captain to**

24                  **All Rescue Ambulances in a Battalion Is Not a**

25                  **Legitimate Comparison**

26          The City's contention that EMS Captains respond to 3% of calls, as compared

27  to all the rescue ambulances combined, is a useless comparison. Doc. No. 51 at p.

28  25. Setting aside the admissibility of the City's statistics, which the City produced

4

on the last day of discovery without providing plaintiffs with any of the underlying data, the City's citation to dispatch statistics is both inaccurate and misleading. The City compared the number of emergency responses by **one EMS Captain** emergency response vehicle to the number of emergency responses by **all of the rescue ambulances** in the battalion. This means the City compared the number of emergency responses by one emergency response vehicle (i.e., one EMS Captain) to the number of emergency responses by up to 14 vehicles (i.e., all of the rescue ambulances in a battalion *combined). See* Plaintiffs' Statement of Genuine Disputes of Material Fact ("SDF") 50-54. Captain Everett stated that in 2012, "rescue ambulances assigned to Battalion 1 were dispatched to emergency calls 50,723 times." SDF 52-53. He compared this to the 1,452 times the EMS Captain in Battalion 1 was dispatched. *Id*. Captain Everett never mentions that there are 14 rescue ambulances in Battalion 1. *Id*. It is nonsensical and misleading to compare the dispatches of one rescue apparatus to the dispatches of 14 rescue apparatus.

An apples-to-apples comparison using this data shows that individual EMS Captains actually respond as frequently, or even more frequently, as individual rescue ambulances. For example, according to the City's data, in 2012, the EMS Captain in Battalion 1 was dispatched to 1,452 calls. SDF 152. Similarly, in 2012, rescue ambulance 17 in Battalion 1 was dispatched 1,672 times. SDF 153. Likewise, in 2014, the EMS Captain in Battalion 1 was dispatched to 1,639 calls,[2] while rescue ambulance 17 in Battalion 1 was dispatched 1,618 times. SDF 154-155. Of course, the City cannot dispute that rescue ambulance 17 was staffed by FLSA non-exempt paramedics whose primary duty was to respond to and resolve all calls they were

---

[2] The EMS Captain in Battalion 1 would also have been responsible for emergency response in another Battalion between the hours of 4 P.M. and 6 A.M., which is often the busiest time for emergency calls. *See* Doc. No. 51-10, Everett Decl. at ¶ 6. The EMS Captain in Battalion 1 would have therefore responded to well over three calls a day in 2014.

1   dispatched to, *just like the EMS Captains*. The paramedics riding rescue ambulance

2   17 are first responders, exactly like the EMS Captains.

3       The City ultimately cites nothing to support its contention that "[c]ompared to

4   the limited calls that EMS Captains attend, paramedics spend significantly more

5   time engaged in direct patient care." Doc. No. 51 at p. 21. As a matter of law, such a

6   comparison is not relevant to the determination of the EMS Captains'

7   primary duty. It is simply the nature of first response work:  "the nature of the job of

8   every front-line fire fighter . . . is generally to wait." *Morrison*, 2016 U.S. App.

9   *LEXIS 11211 at \*27*. "[I]t would be illogical to give much weight to how much time

10  a Captain devotes to answering emergency calls; that time presumably would vary

11  from year to year, based on how many emergencies arise, without changing the

12  'character of the employee's job as a whole." *Id.*

13      More importantly, EMS Captains are automatically dispatched to the most

14  difficult and dangerous calls that the Department receives, including any incident to

15  which multiple rescue ambulances are dispatched, multi-casualty incidents, air

16  ambulance rescues, drownings, hazardous material incidents, natural disasters,

17  rollover or pinned victim traffic accidents, and structure fires. SDF 128. EMS

18  Captains have received commendations for their hands-on work at such scenes. SDF

19  129. On scene, EMS Captains deal with combative patients, and help paramedics

20  restrain combative patients with soft restraints or if necessary, a spit-hood. SDF 130.

21  EMS Captains lift and carry patients with the paramedics on scene, utilizing stair

22  chairs to help carry patients down stairs. SDF 131. EMS Captains respond to

23  incidents of violence, including shootings and hijackings. SDF 132. When

24  responding to shootings, EMS Captains don a bulletproof vest. SDF 133. EMS

25  Captains put themselves at risk of bodily harm. SDF 132.

26      While the City's representative stated that EMS Captains could not be doing

27  their job as a supervisor if they were also rendering care on-scene, this is not

28  supported by the evidence. EMS Captains often render care, with one Captain

1   testifying that he renders care at 90% of scenes to which he responds. SDF 28. That

2   Captain has never been disciplined for failing to perform his duties. SDF 156. There

3   is no evidence that any EMS Captains have been disciplined for failing to perform

4   their duties by instead rendering care. EMS Captains often take steps to aid a

5   patient, or render aid in a situation where a less experienced paramedic might have

6   difficulty. SDF 28, 30, 71. Indeed, the City's own representative, a former EMS

7   Captain, performed hands-on patient care on scene. SDF 72.

8          Given these facts, even using for the sake of argument the City's self-serving

9   data, the City cannot show that EMS Captains' most important duty is anything

10  other than emergency response. It would be a perverse interpretation of the

11  Department of Labor's regulation to deny overtime pay to those employees who are

12  dispatched to fewer calls as compared to others, and the evidence shows that some

13  EMS Captains respond to as many calls as certain rescue units in their battalions.

14                        **(2)      EMS Captains Are in the First Wave of Response**

15         The City is incorrect when it argues that, for the purposes of 29 C.F.R.

16  541.3(b), EMS Captains are not "first responders" merely because they are

17  sometimes the last to arrive on a scene of an emergency. The absurdity of

18  defendant's argument is demonstrated by example. Assume that four apparatuses, an

19  engine, a rescue ambulance, a hazmat truck, and the EMS Captain emergency

20  response vehicle, are all dispatched to an emergency. Only one apparatus can arrive

21  first. If the engine arrives first, this does not mean that the engine company

22  personnel are the only first responders on the call. Order of arrival on an emergency

23  scene does not determine exemption status. Instead, 29 C.F.R. 541.3(b) only requires

24  that the EMS Captains must respond to incidents when dispatched, and do so in the

25  first wave of responders. SDF 68, 128. This fact alone is important indicia of non-

26  exempt status. *See* 69 Fed. Reg. 22,122 at 22,310 ("Another important fact . . . is

27  that exempt police and fire executives generally are not dispatched to calls[.]").

28

1    If in fact EMS Captains do often arrive on scene after other responders, but

2    still as the first wave of Department resources dispatched, as the City alleges, that

3    would be evidence *against* a finding that EMS Captains are exempt:  EMS Captains

4    could not be in charge of directing operations at scenes if others are first on scene

5    and already directing operations. *See Mullins*, 653 F.3d at 116 (discussing

6    *Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285, 1288 (10th Cir.

7    1994); where higher ranking officers than plaintiffs were first on scene and directed

8    operations, that plaintiffs did not have the management function of "directing

9    operations."). EMS Captains are not Incident Commanders, and do not direct

10   operations on-scene. SDF 17, 32, 33, 39-40. Rather, Battalion Chiefs are Incident

11   Commanders who direct operations by directing personnel on scene and determining

12   how to allocate resources. SDF 32-33, 39-40. When Battalion Chiefs leave a scene,

13   they relinquish their Incident Commander duties to a Captain II (truck captain) or

14   Captain I (engine captain), not to an EMS Captain. SDF 40.

15   In short, first response work is the EMS Captain's primary duty. As the EMS

16   Captains testified and as the City's Rule 30(b)(6) witness confirmed, their work as

17   emergency responders is the most important thing they do. SDF 71. They testified

18   that they may respond to up to 16 calls per shift. SDF 51. When they go on a call,

19   they perform hands-on work. SDF 57, 71. On this record, and for the reasons set

20   forth in plaintiffs' motion for partial summary judgment (Doc. No. 49), the EMS

21   Captains are first responders within the meaning of DOL's regulation and are thus

22   entitled to overtime pay.

23           **b)**       **The City Misinterprets 29 C.F.R. 541.3(b) and Conflates**

24                      **"Directing Operations" with "Directing Paramedics" on**

25                      **Scene**

26   The City misinterprets 29 C.F.R. 541.3(b) and the DOL's Preamble to its

27   regulation, and unsuccessfully attempts to align the instant case with cases where

28   "high-level police and fire officials" have been found to be exempt. 69 Fed. Reg.

8

1    22122 at 22130. In such cases, high-level officials were found exempt "only if, in

2    addition to satisfying the other pertinent requirements . . . their primary duty is

3    performing managerial tasks." *Id.* There is not a shred of evidence to support the

4    City's contention that the EMS Captains' primary duty is management of the

5    emergency medical services subdivision of the Fire Department, or that EMS

6    Captains are "high level officials."

7        First, EMS Captains are not "high level police and fire officials" as described

8    in the cases cited in the Preamble. The "high-level" fire officials in those cases "are

9    generally not dispatched to calls" whereas the EMS Captains do not have discretion

10   not to respond when dispatched, and go on up to 16 calls a day. SDF 51, 58.

11       EMS Captains are not "the highest ranking official in the field whenever"

12   they work, unlike the exempt employee in *Maestas*, 664 F.3d 822, 831 (10th Cir.

13   2012). The evidence demonstrates that EMS Captains are almost always out-ranked

14   at the scene of an incident, often by several levels of employees who serve as

15   Incident Commanders. SDF 39, 40. Instead of acting as high level fire officials on a

16   scene, EMS Captains are told what to do by the Incident Commander. SDF 39.

17       Second, EMS Captains are not the exempt "high level officials" who direct

18   operations on scene. SDF 39. In *Smith v. Jackson*, 954 F.2d 296, 297 (5th Cir. 1992),

19   the high level employees were battalion chiefs and district chiefs. When on scene,

20   those employees "assume[d] control of the operation and [could] call for such

21   additional equipment or firefighters as he deem[ed] necessary." *Id*. They "decide[d]

22   when units and personnel may withdraw from a scene." *Id*. While the City attempts

23   to cast the EMS Captains' duties in a similar light, these characterizations are

24   refuted by extensive testimony from plaintiffs as well as the City's representative

25   witness. SDF 17, 32, 33, 39, 40. EMS Captains do not direct operations. SDF 40.

26   They themselves report to an Incident Commander, take orders from an Incident

27   Commander, and would only leave a scene when an Incident Commander indicated

28   they could do so. SDF 39.

1  EMS Captains do not somehow "direct operations" by "observing and

2  supervising paramedics"; that is simply not what "directing operations" means in an

3  emergency response context. Doc. No. 51 at p. 20 (alleging that EMS Captains

4  "direct operations" by "observing and supervising paramedics"); *See Smith*, 954

5  F.2d at 297; *see also Maestas,* 664 F.3d at 829 (managerial work includes "directing

6  operations at emergency scenes, including deciding whether additional personnel or

7  equipment is needed"). The City falsely tries to suggest that an EMS Captain has the

8  responsibility to "clear" an incident and allow personnel to leave. An EMS Captain

9  cannot "clear" a scene; at most an Incident Commander might order an EMS

10  Captain to perform some fact-finding and report back, and the Incident Commander

11  would take the EMS Captains' findings into consideration before clearing the scene.

12  SDF 39. The decision to clear a scene is the Incident Commander's. *Id.*

13  The City's citation to *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d

14  1232 (D.N.M. 2013) is easily distinguishable and actually demonstrates that EMS

15  Captains do not direct operations. In *Maestas*, the employee responded to

16  emergencies by "direct[ing] operations" at the scene, and did so half the time

17  remotely. *Maestas*, 972 F. Supp. 2d at 1242. The employee in *Maestas* was a

18  "tactical commander" in the field, and his duty was to take charge of any situation.

19  *Id.* at 1243. EMS Captains never direct operations on-scene, let alone remotely.

20  SDF 39, 40.

21  Instead, EMS Captains drive to a scene in an emergent mode (i.e., lights and

22  sirens on), and work alongside and while supervising paramedics, helping move

23  furniture and clear paths, lift patients, apply soft restraints, and rendering aid. SDF

24  28, 128-132. EMS Captains perform more hands-on work than fire captains. SDF

25  28. This work is non-exempt. *Maestas, 664 F.3d 822, 829*. This duty is literally more

26  important and takes precedent over every other duty the EMS Captain has. SDF 71.

27  *See, Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 605 (E.D. Tenn. 2013)

28  (employees were "tasked with the responsibility of interrupting whatever other task

1  or activity they may have been involved in to respond to a fire or emergency call"

2  and such duties were clearly the most important duties performed.).

3      The facts therefore demonstrate that EMS Captains' most important job duty

4  is to respond to emergency scenes to provide patient care, including supervising

5  paramedics in providing patient care. This is not exempt work. As the case law and

6  the DOL's interpretation of its regulation show, emergency medical response, and

7  the concomitant supervision of employees on scene, is non-exempt work. 29 C.F.R.

8  541.3(b) ("for example, a . . . fire fighter whose primary duty is to . . . fight fires is

9  not exempt under section 13(a)(1) of the Act merely because the . . . fire fighter also

10  directs the work of other employees in . . . fighting a fire").

11      c)      **The City Has Not Tried to Quantify How Much Time the**

12              **EMS Captains Spend Performing "Exempt" Work**

13      The City did not try to quantify the amount of time EMS Captains perform

14  exempt work as compared to non-exempt work, because such a comparison is fatal

15  to its argument. EMS Captains spend an overwhelming proportion of their shifts

16  performing non-exempt work:  responding to emergencies, restocking rescue

17  vehicles, or waiting to respond in a constant state of preparedness.

18      Rather, without discussing their relative importance or the amount of time the

19  EMS Captains spend on so-called exempt duties, the City points to several allegedly

20  "managerial" tasks that the EMS Captains perform:  (1) maintaining inventory by

21  restocking ambulances; (2) coordinating and implementing training; (3) evaluating

22  personnel performance; and (4) investigating complaints. Evaluating personnel

23  performance, the only task that is arguably "exempt," comprises a miniscule amount

24  of time compared to the non-exempt duties performed by the EMS Captains. On the

25  undisputed record here, the remaining three tasks: restocking ambulances, training,

26  and investigating complaints are non-exempt work as discussed below.

27

28

11

**(1)     Restocking and Driving to Restock Is Non Exempt Work**

The City claims that the EMS Captains' narcotics resupply duties are akin to the managerial duty of "maintaining inventory of property and supplies," citing the Department of Labor's Preamble to 29 C.F.R. §541.3. The City is plainly wrong. The only case cited in the Preamble regarding maintenance of inventory was *Masters v. Huntington*, 800 F. Supp. 363, 365 (S.D.W.V. 1992). In *Masters*, Fire Captains were determined to be exempt because, in addition to other exempt duties such as having the authority to hold members over from the previous shift, recommending hiring, imposing discipline, and directing operations at an incident, the Captains were responsible for all firefighting equipment in a station and maintained an inventory of property at the station house. *Masters*, 800 F. Supp. at 365. These types of managerial duties are exempt because they relate to "management and general operations . . . of the entire enterprise." *See Barrows*, 944 F. Supp. 2d at 604. In contrast, EMS Captains are not responsible for maintaining fire station equipment, have no power to purchase equipment for the fire station, and the only equipment they are accountable for is their own. SDF 123-124.

Instead, EMS Captains spend between six and 12 hours a day driving, between hospitals, ambulances, and fire stations, in order to restock narcotics or other necessary equipment on emergency response vehicles. SDF 98. The response vehicles require those narcotics because they use narcotics in delivering aid, and without a minimum supply of narcotics, the vehicles must go out of service. SDF 100. Restocking supplies on emergency vehicles relates to ensuring the operational readiness of rescue vehicles, and is non-exempt. *See Morrison*, 2016 App. LEXIS at *30, n.8 ("non-supervisory duties that relate to ensuring operational readiness for first response also are non-exempt under the relevant regulations, even if they might be described colloquially as 'management'"); *Barrows*, 944 F. Supp. 2d at 604 (certain managerial duties such as conducting training and assuring a constant state

1  of preparedness relates directly to regular front line duties and are therefore non-

2  exempt work).[3] To the extent that paperwork is involved in restocking, ministerial

3  tasks do not turn non-exempt work into exempt work. *See Morrison*, 2016 U.S. App.

4  LEXIS 11211 at *33.

5      Moreover, courts have determined that driving and delivering supplies is

6  manual work, and non-exempt. *See, e.g., Haas v. Verizon N.Y., Inc*., 2015 U.S. Dist.

7  LEXIS 107842, *19-20 (S.D.N.Y. 2015). Here, the EMS Captains spend between

8  six and 12 hours a day driving. This work is non-managerial.

9                    **(2)   EMS Captains' Training Is Non-exempt Work**

10     The City cannot point to any evidence that the EMS Captains design training

11 programs or coordinate training. SDF 23, 24. Instead, any training they perform is in

12 the field and related to front line emergency work. As the court in *Barrows*

13 recognized, conducting training that relates to front-line duties is non-exempt work.

14 *Barrows*, 944 F. Supp. 2d at 604. The EMS Captains' training duties are exclusively

15 related to the provision of emergency medical services. SDF 84. EMS Captains

16 receive training from the Department's training section, and then use these skills in

17 the field and at the same time, train paramedics in the field on the use of new

18 techniques or equipment. *Id.* This is non-exempt work under the Department's

19 regulations. 29 C.F.R. 541.3(b). "[L]ike other efforts to assure a constant state of

20 preparedness, [training that] relates directly to . . . regular front line . . . duties is

21 non-managerial and non-exempt under the first responder regulation." *Morrison,*

22 2016 U.S. App. LEXIS 11211 at *29.

23

24

25 _____

26 [3] The City is well aware that restocking work is non-exempt, as the City's
   attorneys informed the City of as much while providing legal advice regarding
27 EMS Captains' FLSA status. *See* SDF 149.

28

1                 **(3)**     **Fact Finding and Conducting Investigations Is**

2                           **Non-exempt Work**

3       The EMS Captains may participate in approximately two or three

4 investigations annually regarding complaints against paramedic work in the field,

5 and perform fact-finding related to the medical aspects of the complaint. SDF 89.

6 They do not make any recommendations or conclusions and merely report their

7 findings up the chain of command. SDF 89, 91, 92, 93. EMS Captains do not

8 impose discipline. SDF 11. This is not exempt work. *See Calderon v. Geico*, 809

9 F.3d 111, 126-127 (4th Cir. 2015) (stating that fact-finding does not relate to

10 management or general business operations, and citing a Department of Labor

11 opinion stating that despite investigative discretion, investigators' fact-finding work

12 was non-exempt when their work was "diligent and accurate fact-finding, according

13 to [agency] guidelines, the results of which were turned over to [the agency], who

14 then makes a decision[.]").

15                 **(4)**     **EMS Captains Spend Less than 0.34% of**

16                         **Their Time on Performance Evaluations.**

17       The only potentially exempt task the City could point to is completing the

18 medical skills portion of a paramedic's annual evaluation. However, the City failed

19 to show that the EMS ratings are given any weight whatsoever and are not relied on

20 in making personnel decisions. Indeed, the overall rating is done by the Station

21 Commander. SDF 20, 76. In most instances, the Station Commander has already

22 input his final rating before an EMS Captain completes their portion of the

23 evaluation. SDF 76. An EMS Captain might disagree with the Station Commander,

24 but the Station Commander does not change their rating based on the EMS

25 Captains' view. SDF 76, 82. The Station Commander is typically a non-exempt

26 Captain I or Captain II. SDF 76.

27       Even if evaluating performance is an exempt duty, which it is not here, the

28 EMS Captains spend between six and ten hours *a year* completing the medical skills

portion of evaluations. SDF 157.  This is less than 0.35% of their time per year and is not their primary duty.

**B.     EMS Captains Do Not Customarily and Regularly Perform Exempt Executive Duties**

To be exempt under the highly compensated exemption, EMS Captains must "customarily and regularly perform one or more" of the exempt executive, administrative, or professional duties, and their primary duty must include office or non-manual work. The City cannot demonstrate either.

**1.     EMS Captains Do Not Manage the Emergency Medical Services Subdivision**

As shown above, the City's allegedly "managerial" duties are either non-exempt or, if the type of work that can be considered exempt, comprise a miniscule proportion of the EMS Captains' time. EMS Captains do not "customarily and regularly perform" managerial duties.

In its conclusory analysis, the City conflates management of a business operation (which EMS Captains do not perform) with management-like tasks performed in relation to emergency response (a non-exempt duty). Typical high-level management tasks that are ordinarily associated with executive or administrators are things like "planning and controlling a budget, selecting new employees, setting rates of pay and hours of work." *Morrison*, 2016 U.S. App. LEXIS 11211 at *33. The EMS Captains perform none of these tasks. SDF 14. "[U]nder the first responder regulation, tasks performed as part of or in furtherance of the Captains' first response duties are not deemed 'management' and will not render the Captains exempt from overtime pay requirements." *Morrison,* 2016 U.S. App. LEXIS 11211 at *24 (citations omitted).

An example of actual management work in the EMS subdivision of the Department is instructive. In 2010, certain transfers or reductions in EMS Captains in 2010 that caused concerns because the transfers did not respect EMS Captains'

15

1  seniority. SDF 14. To try to resolve this grievance, the EMS Captains had

2  conversations with their supervisors and managers at the EMS office downtown,

3  including multiple chiefs and the medical director. SDF 14. The oversight and

4  management of the EMS subdivision in that instance was the responsibility of the

5  chiefs and the medical director, not the 24-hour EMS Captains.

6      EMS Captains do not customarily or regularly perform exempt management

7  duties. 29 C.F.R. 541.100(a)(2). The City's argument that EMS Captains "manage

8  the emergency medical services subdivision" of the Department fails.

9              2.    **EMS Captains Do Not Customarily or Regularly**

10                  **Direct the Work of Two or More Employees**

11      The City also fails to demonstrate that EMS Captains customarily or regularly

12  direct the work of two or more employees. The DOL Preamble states that

13  emergency responders are not exempt merely because they direct "the work of other

14  employees in the conduct of an investigation or fighting a fire." 69 Fed. Reg. 22122

15  at 22129. In other words, directing the work of the paramedics at the scene of an

16  emergency incident is non-exempt work, which the City cannot use to meet its

17  burden. *See Morrison*, 2016 U.S. App. LEXIS 11211 at *19-20, 24 ("tasks

18  performed as part of or in furtherance of the Captains' first response duties are not

19  deemed 'management' and will not render the Captains exempt[.]").

20      EMS Captains do not direct personnel at a fire station, and no one reports to

21  them in the chain of command. SDF 49, 148. In other words, they are not

22  supervisors. The only other fact the City alleges in support of its contention that

23  EMS Captains direct the work of two or more employees is that EMS Captains

24  complete paramedic performance evaluations. Spending six to ten hours *a year*

25  having input on performance evaluations cannot reasonably qualify as customarily

26  or regularly directing the work of two or more employees. SDF 157. The City

27  therefore cannot satisfy this prong of the executive exemption.

28

16

C. **EMS Captains Do Not Satisfy the Administrative Duties Tests**

    1. **EMS Captains' Primary Duty Is Not Office or Non-Manual Work Directly Related to the Management of the Medical Services Subdivision**

As previously demonstrated, the EMS Captains' primary duty is emergency response; EMS Captains do not "direct operations" at the scene of an emergency, but rather perform hands-on work and supervise the provision of medical care by paramedics to provide the best possible triage, treatment, and transportation of patients. SDF 28, 40. This kind of emergency response is not office or non-manual work; nor is it management of the emergency medical services subdivision. 69 Fed. Reg. 22122 at 22129-22130. The City's statement that "delivering rapid and effective emergency response services to citizens of the city" is exempt office or non-manual work directly contradicts the Department of Labor's interpretation and all relevant case law. Doc. No. 51 at p. 17.

To directly relate to the management or business operations of the employer, as required to meet the prong of the administrative exemption, EMS Captains must perform work that is "directly related to assisting with the running or servicing of the business[.]" 29 C.F.R. § 541.201(a). Here, the EMS Captains' primary role is not assisting defendant's management in the running of the business; instead, EMS Captains perform important front-line emergency response work.

The City's attempt to limit the definition of manual work to "cleaning, maintenance, repair, and working on a production line" dramatically understates the definition of manual work under the FLSA. Doc. No. 51 at p. 17. As the DOL stated in the Preamble, "[t]he description of a 'blue collar' worker as an employee performing 'work involving repetitive operations with their hands, physical skill and energy' was derived from a standard dictionary definition of the word 'manual.' *See,*

1  *e.g., Adam v. United States*, 26 Cl. Ct. 782, 792-93 (1992) ('dictionary definition of

2  manual' is, requiring or using physical skill and energy')[4]." 69 Fed. Reg. 22122 at

3  22128. *See also Adam*, 26 Cl. Ct. at 792-793 (granting border patrol agents

4  summary judgment in an FLSA overtime case, because their work was not "office or

5  predominately nonmanual work" when their jobs required frequent walking,

6  entering restricted areas, protecting one's self from attacks, and lifting moderately

7  heavy objects, and stating that "[n]on-manual work, therefore, would not call for

8  significant use of physical skill or energy.")

9       The EMS Captains' emergency response duties require significant use of

10  physical skill and energy. SDF 44 .134. Restocking narcotics takes between six and

11  12 hours a shift, including driving to hospitals and locating rescue vehicles. SDF 98.

12  Driving is manual work. *See Haas v. Verizon N.Y., Inc*., 2015 U.S. Dist. LEXIS

13  107842 (S.D.N.Y. 2015) (listing driving and dropping of supplies as part of non-

14  exempt manual work); *Goulas v. Lagreca*, No. 12-898, 2013 U.S. Dist. LEXIS

15  80368 (E.D. La. 2013) (driving is manual labor). EMS Captains' primary duty is not

16  office or non-manual work and they do not manage the Fire Department's provision

17  of emergency medical services. Instead, the EMS Captains, like the paramedics,

18  deliver emergency medical services to the citizens of Los Angeles.

19       **2.    EMS Captains' Primary Duty Does Not Include**

20       **Exercise of Discretion and Independent Judgment**

21       The City misconstrues the law with respect to the "discretion and independent

22  judgment" prong of the administrative exemption. To meet this prong, the employee

23  must be involved in the "comparison and evaluation of possible courses of conduct,"

24  with the authority to "make an independent choice, free from immediate direction or

25  ─────────────────────

26  [4] There is no reason there would be different definitions of "manual" under the

27  blue collar regulation, 29 C.F.R. 541.3(a), and the first responder regulation, 29

  C.F.R. 541.3(b).

28

18

1  supervision . . . with regard to matters of significance." 29 C.F.R. § 541.202(a), (c).

2  Such authority is distinguished from the use of skill in applying standardized or

3  well-established techniques and procedures. 29 C.F.R.§ 541.202(e). Moreover, the

4  discretion must exist with regard to matters of significance in terms of operation of

5  the business. 29 C.F.R. § 541.202.

6       To the extent that EMS Captains exercise discretion, they do not satisfy this

7  prong of the administrative exemption, as the discretion exercised must be regarding

8  matters of significance in the operation of the business. 29 C.F.R.541.202(a); (b).

9  "Employees make decisions as to matters of significance when they exercise

10  authority within a wide range to commit their employer in substantial respects

11  financially or otherwise." *McAllister v. Transamerica Occidental Life Ins. Co.*, 325

12  *F.3d 997, 1001 (8th Cir 2003)*. EMS Captains' work involves using "skills and

13  technical abilities in gathering factual information, applying known standards or

14  prescribed procedures, determining which procedure to follow, or determining

15  whether prescribed standards or criteria are met," which is not exempt work. 29

16  C.F.R. 541.203(j); *see also McAllister,* 325 F.3d at 1002.

17       The City argues disingenuously that the "EMS Captains are the highest

18  medical authority in their battalion, which requires them to utilize discretion on the

19  most serious medical issues in their battalions." Doc. No. 51 at p. 18. EMS Captains

20  may be the highest medical authority at the scene of an emergency incident. SDF 14.

21  But determining the proper course of action during an emergency call cannot be an

22  exempt exercise of discretion and independent judgment; otherwise, all paramedics

23  would be exempt employees, which they are not. Such work instead involves the use

24  of skill in applying standardized techniques and procedures. SDF 25. The City

25  provides no other evidence as to how EMS Captains "utilize discretion on the most

26  serious medical issues in their battalion."

27       EMS Captains apply their skills and experience as paramedics to their

28  emergency response work, and follow an EMS Captains' Manual. SDF 25. One

1  factor that can help determine whether an employee is exercising independent

2  judgment and discretion is whether they have the authority to waive or deviate from

3  the established policies and procedures without prior approval. 29 C.F.R.

4  541.202(b). The City acknowledges that the EMS Captains must follow the EMS

5  Captains' Manual. SDF 25.

6        EMS Captains are in fact not the highest medical authority in a battalion;

7  EMS Captains report to Battalion Chiefs (who may have been trained as

8  paramedics) as well as to supervisors in the EMS Services division. SDF 17, 18, 27.

9  The aforementioned example of chiefs or the medical director of the EMS division

10  office resolving staffing disputes is more similar to the type of work that qualifies as

11  decision-making on "matters of significance." The "discretion and independent

12  judgment" prong of the administrative exemption rests on a "distinction between

13  simple, micro-level inspection or data-gathering and more complicated, macro-level

14  planning, assessment and advising." *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008

15  U.S. Dist. LEXIS 81831, at *14 (C.D. Cal. Aug. 25, 2008). Because EMS Captains

16  do not "engage in detailed analysis of facts and their import, or high-level planning

17  and implementation" they cannot satisfy this prong. *Id*. at *14-15.

18        Finally, EMS Captains are paid similarly to other Captains, making slightly

19  more in base salary than Captain Is, and the same base salary as Captain IIs, so there

20  is no evidence to support the City's allegation that EMS Captains are paid more

21  because they are the "highest medical authority in their battalion." SDF 27.

22       **D.**    **The City Cannot Prove that the EMS Captains'**

23            **Primary Duty Includes Office or Non-Manual Work**

24        The City has utterly failed to address the requirement that, in order to be a

25  highly compensated employee under the FLSA, the EMS Captains' primary duty

26  must include office or non-manual work. Because the City failed to bring forward

27  any evidence, and for the reasons set forth in Section C, Part 1 of this brief and in

28  plaintiffs' motion for partial summary judgment (Doc. No. 49), the City cannot meet

20

1   its difficult burden. The City's own position description describes the physical

2   nature of the job, requiring strength to lift between 20 and 100 pounds, facing severe

3   work conditions outdoors or on/near water, extensive use of legs for walking, and

4   use of back for strenuous labor. SDF 134. The EMS Captains' physical conditioning

5   "must allow for the effective completion of duties in a variety of conditions for

6   prolonged hours including natural or manmade disasters, hazardous environments

7   and civil unrest." SDF 134. Under the law, this does not include office or non-

8   manual work. *Morrison*, 2016 U.S. App. LEXIS 11211 at *36, n. 11.

9   **E.   The City's Abysmal Track Record of FLSA Violations Strongly**

10  **Supports an Award of Liquidated Damages and a Third Year of**

11  **Backpay**

12      Since 1997, the City has been a serial violator of the FLSA concerning

13  multiple groups of its employees. The Ninth Circuit in *Haro v. City of Los*

14  *Angeles*—in affirming this Court's award of a third year of withheld overtime pay

15  and equal liquidated damages to Department dispatchers and aeromedical

16  technicians—underscored the City's repeated non-compliance with the FLSA.

17  *Haro*, 745 F.3d at 1253; *Acrich v. City of Los Angeles* (single-function paramedics);

18  *Cleveland*, 420 F.3d 981 (9th Cir. 2005) (dual-trained paramedics and quality

19  improvement analysts).  The City's abysmal track record over 19 years of ignoring

20  "red flags" and failing to adequately "examine the positions at issue", justified the

21  Ninth Circuit's affirmance of equal liquidated damages and the finding of

22  willfulness to support a third year of backpay in *Haro. Id*., at 1253, 1257-58.

23  Adding the FLSA violations here provides an even more compelling record for

24  awarding full relief.

25

26

27

28

21

**F.     The City Has Not Demonstrated Its Subjective Good Faith and Objective Reasonableness to Avoid Mandatory Liquidated Damages**

Liquidated damages are not punitive but compensate for losses caused by failure of the employer to pay lawful wages. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996). "Double damages are the norm, single damages the exception." *Chao v. A-One Med. Servs.*, 346 F.3d 908, 920 (9th Cir. 2003) (citations omitted). An employer can only avoid mandatory liquidated damages by demonstrating it acted in "subjective 'good faith'" *and* "had objectively 'reasonable grounds' for believing that its acts or omissions giving rise to the failure did not violate the FLSA." 29 U.S.C. §260 (emphasis added). The burden is on the employer, the burden is "difficult." *Alvarez v. IBP, Inc.,* 339 F.3d 894, 910 (9th Cir. 2003).* The City has not met its burden.

**1.     The City Failed to Determine Its FLSA Obligations and Take Active Steps to Comply with Them**

The City's sole argument that it had objectively reasonable grounds for believing its acts did not violate the FLSA is that it "consulted with legal counsel." Doc. No. 51 at p. 25.

First, the City's argument fails because it knew it was in violation of the FLSA by classifying the EMS Captains as partially exempt under 29 U.S.C. 207(k). SDF 107. The City took no action to classify the EMS Captains as exempt under the highly compensated exemption, and the City's lawyers never informed the City that EMS Captains were exempt under the highly compensated exemption. SDF 145. Instead, the City continued to pay EMS Captains as 29 U.S.C. §207(k) employees for years after it knew that the EMS Captains were not eligible for the §207(k) partial exemption for fire fighters.

Second, any analysis the City performed with respect to the highly compensated exemption was not objectively grounded in the law. Rather than

22

1    obtaining their lawyers' opinion based on an honest investigation of the EMS

2    Captains' duties, the City told its attorneys that based on the "management" the

3    EMS Captains performed, the EMS Captains were not first responders. SDF 116,

4    143, 146-148. The City came to this erroneous conclusion even though it supposedly

5    consulted the Department of Labor's first responder regulations, which specifically

6    state that supervisors of emergency response are not exempt by virtue of their field

7    supervision. SDF 110, 141, 147. The City never sought an opinion letter from the

8    Department of Labor regarding the EMS Captains' FLSA status. SDF 140. *See*

9    *Haro*, 745 F.3d at 1257 (no DOL opinion letter sought by the City).

10         Instead of conducting an internal analysis as to the day-to-day duties of the

11    EMS Captains, the City provided its attorneys with job descriptions and allegedly

12    consulted dispatch frequency numbers during meetings. SDF 111, 138, 139. This is

13    hardly the "extensive analysis" the City describes in its brief, with no evidence in

14    support. Document No. 51 at p. 25. What the evidence does show is that the City

15    told its attorneys the legal conclusion it wanted. SDF 141, 143, 147. The City's non-

16    compliance with the FLSA was therefore not objectively grounded in the law.

17         **2.    Subjective Good Faith Requires an Employer to**

18              **Take Action To Determine Its FLSA Obligations**

19       "Good faith" . . . requires that an employer ***first take active steps to ascertain***

20        ***the dictates of the FLSA and then move to comply with them*** . . . . That [the

21        employer] did not purposefully violate the provisions of the FLSA is not

22        sufficient to establish that it acted in good faith.

23    *Reich*, 121 F.3d at 71 (internal citations omitted) (emphasis added). *See also* 29

24    C.F.R. §790.15 (good faith "requires that the employer have honesty of intention

25    and no knowledge of circumstances which ought to put him upon inquiry").

26         Again, the only evidence the City presents to support its claim that it acted in

27    good faith was that it met with legal counsel. As a matter of law, merely meeting

28    with legal counsel is insufficient to demonstrate good faith.

1    While not a complete defense, an employer may assert that it relied in good-

2    faith on counsel's advice, provided it "show[s] that he made a full disclosure of all

3    material facts to his attorney and that he relied in good faith on the specific course of

4    conduct recommended by the attorney." *United States v. Bush*, 626 F.3d 527, 539

5    (10th Cir. 2010). *See also, United States v. Kenney*, 911 F. 2d 315, 322 (9th Cir.

6    1990) (same); *Mumby v. Pure Energy Servs. (USA), Inc*., 636 F.3d 1266, 1270 (10th

7    Cir. 2011).

8    For the same reasons as previously stated, the City cannot rely on an "advice

9    of counsel" defense:  the City did not fully disclose all material facts to its counsel

10   and did not rely on its attorneys' advice, to the extent that legal counsel gave advice.

11   The City did not provide its attorneys with all of the material facts. SDF 142-148.

12   The City never obtained a final opinion from its lawyers providing a determination

13   as to the EMS Captains' exemption status. SDF 116.

14   To the extent that the attorneys recommended any specific course of conduct

15   the City failed to take any actions in reliance on the recommendations. Although the

16   City's attorneys told it that the EMS Captains were not entitled to the §207(k)

17   exemption, the City made a calculated decision that its litigation exposure with

18   respect to the EMS Captains was not as serious as the exposure it faced from other

19   misclassified employees, and therefore took no action. SDF 151.

20   **G.    Plaintiffs Are Entitled to a Three Year Statute of**

21   **Limitations for Recovering Backpay**

22   The FLSA provides that non-willful violations are subject to a two-year

23   statute of limitations for recovering backpay. The two-year statute of limitations

24   may be extended to three years when the employer's violation is willful or reckless.

25   *Flores v. City of San Gabriel*, 2016 U.S. App. LEXIS 10018, *33-34 (9th Cir., June

26   2, 2016) (citing 29 U.S.C. § 255(a)) (internal citations omitted).

27   An employer's violation of the FLSA is willful within the meaning of §255(a)

28   where it "either knew or showed reckless disregard for the matter of whether its

24

1    conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Company*, 486

2    U.S. 128, 133 (1988). An employer who knows of a risk that its conduct is contrary

3    to the law, but disregards that risk and proceeds anyway acts willfully. *Alvarez,* 339

4    F.3d 894, 908-909 (Three-year statute applies "where an employer disregarded the

5    very 'possibility' that it was violating the statute.") (citations omitted). Once an

6    employer becomes aware of an FLSA issue, continuing a noncomplying practice can

7    be "reckless." *Reich v. Bay*, 23 F.3d 110, 117 (5th Cir. 1994). The employer must

8    "take affirmative action to assure compliance." *Alvarez*, 339 F.3d at 909. Merely

9    waiting to be sued and defending a lawsuit is not an affirmative step to assure

10    compliance. *Id.*

11      As noted, the City has repeatedly violated the FLSA over two decades. *See,*

12    *Haro and Cleveland*. Previous FLSA violations, "even if different in kind from the

13    instant one," put the employer "on notice of other potential FLSA requirements."

14    *Chao*, 346 F.3d at 919. Yet, the City did not take any steps to change the EMS

15    Captains' improper classification, even though it was aware of its non-compliance,

16    instead continuing to pay them in accordance with 29 U.S.C. 207(k), the partial

17    exemption reserved only for fire suppression employees. Instead, the City took a

18    calculated risk and turned its attention to other employees who were also

19    misclassified. SDF 151. The Court should not reward such a strategy of willful or

20    reckless non-compliance, and should grant plaintiffs the third year of their

21    unlawfully withheld overtime pay.

22      Accordingly, defendant's motion for partial summary judgment on the issue

23    of willfulness should be denied, and plaintiff EMS Captains are entitled to a third

24    year of make-whole relief.

25   **IV.**    **Conclusion**

26      For the foregoing reasons, the Court should deny defendant's motion for

27    summary judgment, and grant plaintiffs' motion for partial summary judgment.

28

1

2                    /s/Molly A. Elkin

3          THOMAS A. WOODLEY
           MOLLY A. ELKIN
4          WILLIAM W. LI
5          taw@wmlaborlaw.com
           mae@wmlaborlaw.com
6          wwl@wmlaborlaw.com
7          WOODLEY & McGILLIVARY
           1101 VERMONT AVE, N.W.
8          SUITE 1000
9          WASHINGTON, DC 20005
           Telephone: (202) 833-8855
10         Facsimile: (202) 452-1090

11

12         LESTER G. OSTROV
13         lostrov@lgolaw.com
           LESTER G. OSTROV,
14         PROFESSIONAL CORP.
15         5757 Wilshire Blvd.
           Penthouse 5
16         Los Angeles, CA  90036
17         Telephone: (323) 424-3440
           Facsimile: (323) 424-3468
18

19         Counsel for Plaintiffs

20

21

22

23

24

25

26

27

28

1

## **Certificate of Service**

2

3
I certify that on August 29, 2016, the foregoing document was served on all following counsel of record through the Court's ECF filing system.

4

5
Brian P. Walter

6
bwalter@lcwlegal.com
Elizabeth Tom Arce

7
earce@lcwlegal.com
Joshua A. Goodman

8
jgoodman@lcwlegal.com
LIEBERT CASSIDY WHITMORE

9
A Professional Law Corporation

10
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

11
Telephone: 310.981.2000

12
Facsimile: 310.337.0837

13
Michael N. Feuer, City Attorney

14
Wayne H. Song, Managing Assistant City Attorney
LOS ANGELES CITY ATTORNEY'S OFFICE

15
200 North Main Street, Room 700,

16
City Hall East
Los Angeles, CA 90012-4131

17
Telephone: (213) 978-8286

18
Facsimile: (213) 978-8216

19

20
                                        /s/ Molly A. Elkin

21
                                        Molly A. Elkin

22

23

24

25

26

27

28