LESTER G. OSTROV
lostrov@lgolaw.com
LESTER G. OSTROV,
PROFESSIONAL CORP.
5757 Wilshire Blvd.
Penthouse 5
Los Angeles, CA 90036
Telephone: (323) 424-3440
Facsimile: (323) 424-3468

THOMAS A. WOODLEY
MOLLY A. ELKIN
WILLIAM W. LI
taw@wmlaborlaw.com
mae@wmlaborlaw.com
wwl@wmlaborlaw.com
WOODLEY & McGILLIVARY
1101 VERMONT AVE, N.W.
SUITE 1000
WASHINGTON, DC 20005
Telephone: (202) 833-8855
Facsimile: (202) 452-1090

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JAMES CARSON, ET AL.,

      Plaintiffs,

vs.

CITY OF LOS ANGELES,

      Defendant.

CASE NO. CV15-07057-JFW (KLSx)

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Hearing Date: September 19, 2016,
Time: 1:30 PM
Courtroom 16**

**Pre-trial Hearing Date: October 7, 2016, 10:00 AM**
**Trial Date: October 18, 2016, 8:30 AM**

Table of Contents

I.   Introduction ..................................................................................................... 1

II.  Argument ........................................................................................................ 5

    A.  EMS Captains Are First Responders ..................................................... 5

        1.  The City Cannot Dispute that EMS Captains Are Automatically Dispatched as the First Wave of Responders ................................................................................. 5

        2.  The City Misinterprets the First Responder Regulation and the EMS Captains' Job Duties .............................. 6

        3.  Relative Frequency of Dispatch is Not Relevant, and the City's Dispatch Data Offers a Misleading Comparison ............... 9

    B.  EMS Captains Do Not Perform Exempt Managerial Tasks ................. 10

        1.  Tasks that Could be Colloquially Referred to as Managerial are Non-exempt when Related to Emergency Response .......................................................................................... 10

        2.  Restocking Requires Extensive Driving and Walking, and is Manual Work ............................................................. 10

    C.  The City Cannot Avoid Liquidated Damages or a Third Year of Liability With Its Advice of Counsel Defense ...................................... 12

III. Conclusion .................................................................................................... 12

# Table of Authorities

## Cases

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 604 (E.D. Tenn. 2013) ........9

*Calderon v. Geico Gen. Ins. Co.*, 809 F.3d 111 (4th Cir. 2015)...............................5

*Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822 (10th Cir. 2012)......................6

*Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, at 1243 (D.N.M. 2013) ................................................................................................................................6

*Miller v. Farmers Ins. Exch.* 481 F.3d 1119 (9th Cir. 2007) ........................... 10, 11

*Morrison*, 2016 U.S. App. LEXIS 11211 (4th Cir., June 21, 2016) ................. 4, 6, 8

*Mullins v. City of New York*, 653 F.3d 104 at 115 (2d Cir. 2011)..........................6, 7

*Smith v. Jackson*, 954 F.2d 296 (5th Cir. 1992) ......................................................7, 8

*United States v. Bush*, 626 F.3d 527 (10th Cir. 2010) ...............................................12

## Statutes

29 U.S.C. §207(k) ......................................................................................................3

29 U.S.C. §255(a) ......................................................................................................3

29 U.S.C. §260...................................................................................................... 3, 11

## Regulations

29 C.F.R. §541.3(b)................................................................................................3, 7

29 C.F.R. §541.601(d)...............................................................................................11

29 C.F.R. ¶541.700(b)................................................................................................3

29 C.F.R. 541.700(a) ..............................................................................................3, 5

69 Fed. Reg. 22,122 ...................................................................................................4

## I. Introduction

The City ignores the requirement that "[t]o qualify for exemption . . . an employee's "primary duty" must be the performance of exempt work." 29 C.F.R. 541.700(a) (April 23, 2004). The City asserts that the EMS Captains' primary duty is "managing, overseeing and supervising the medical component of emergency response calls to ensure that the standard of patient care is met." Document Number 56 ("Doc. No. 56") at p. 3. But defendant fails to offer a single fact to show that EMS Captains manage or supervise anyone or anything other than while on-scene at an emergency call. Directing the work of other paramedics on scene is non-exempt work under the "first responder" regulation. Even the City's lawyers admit as much in a letter to the City: "If the EMS Captains are very frequently on-scene, directing the response to incidents, then there is a good chance that the 'first responder' rule will render them non-exempt. This is particularly true if the types of activities and other support activities in the field make up over 50% of the Captains' work." Combined Statement of Facts ("CSF") 84-88. As importantly, the EMS Captains' primary duty of emergency response is neither office work or non-manual. Instead, it is dangerous, physical work in the field, not behind a desk.[1] As a matter of law, the highly compensated exemption cannot apply. 29 C.F.R. §541.601 (April 23, 2004) (to be exempt under the highly compensated exemption, an employee's primary duty must include office or non-manual work).

---

[1] The position description describes the physical nature of the EMS Captain's job: "Assigned members must be capable of moving sick and injured patients onto a gurney and into an ambulance; capable of heavy physical exertion including moving . . . heavy equipment; must be in good cardiovascular condition in order to carry . . . patients up and down numerous flights of stairs and across rugged terrain. The work environment will expose the member to various hazardous diseases and materials, physical danger, and other life-threatening circumstances in carrying out the scope of their duties." CSF 41, 149.

The parties agree that the EMS Captains' primary duty is to respond to emergency incidents as quickly as possible. CSF 2, 33. Of course, the EMS Captains have to drop everything they are doing if they are toned out to an emergency call. CSF 33-35. Based on this fact alone, emergency response is their primary duty.

On scene, the EMS Captains render aid while supervising other paramedics to make sure that patients are triaged, treated, and transported safely and in accordance with the Los Angeles Fire Department's ("the Department") policies and procedures. CSF 47, 53.

In an attempt to turn this vital emergency response work into "management of the EMS division," defendant argues that the EMS Captains primary duty includes: "overseeing the medical care provided," "supervising paramedics to ensure that patients are properly cared for," "conducting and assisting with investigations of complaints against paramedics," "training and counseling paramedics," "managing narcotics for the LAFD's rescue apparatus," and "various administrative duties including completing performance evaluations of paramedics and ensuring consistent interpretation of and instruction on LAFD policies and procedures regarding patient medical care." Doc. No. 56 at p. 3.

Based on the above list, however, plaintiffs are entitled to summary judgment. To the extent that EMS Captains "oversee" or "supervise" medical care, they do so on the scene of an emergency, working hands-on with paramedics at dangerous incidents. CSF 2, 3, 46, 53, 54. EMS Captains must respond when dispatched, and respond as often or more often than a rescue ambulance. CSF 33-35, *see infra* at Section II.A.3. The EMS Captains are never Incident Commanders; rather, they report to and carry out the orders of an Incident Commander. CSF 57. This is non-exempt work under 29 C.F.R. §541.3(b) (April 23, 2004).

EMS Captains are not high level officials and do not "direct operations." *See* Plaintiffs' Response to Combined Statement of Fact (P-CSF) 138, 160. They do not

manage or oversee the EMS subdivision; other, higher-ranking employees have that role. CSF 15, P-CSF 135. Instead, the EMS Captains spend much of the shift waiting to be told where to respond, and during daylight hours, spend their time performing manual labor driving to restock ambulances with narcotics, while remaining available for emergency response. CSF 2, 63, 66.

To the extent that EMS Captains "conduct and assist with investigations," which is rare at best, the work comprises fact-finding at the request of supervisors. CSF 70, 71. This is non-exempt work. To the extent that EMS Captains "train and counsel paramedics," they train paramedics on skills and equipment necessary for emergency response. CSF 68, 69. EMS Captains do not design training and are not assigned to the training division. CSF 6, 23, 69. Instead, they relay pre-hospital care medical skills in the field as instructed by the training division. CSF 68, 69. This is non-exempt work. To the extent that EMS Captains "manage narcotics," they are *driving* some 80 - 100 plus miles a shift in City of Los Angeles traffic to hospitals and to ambulances in the field, walking into hospitals, and restocking rescue vehicles with narcotics that they need to continue to respond to emergencies. CSF 63. EMS Captains do not determine the quantity of narcotics each ambulance must have, do not recommend which narcotics must be used; instead, they deliver the quantity of narcotics needed based on tightly controlled procedures set forth in the Department's rules and regulations – rules from which the EMS Captains have no discretion to deviate. CSF 61, P-CSF 218. By the defendant's own admission, this is non-exempt work. CSF 101.

While the amount of time spent performing exempt work is not the only factor in the exemption analysis, it is a useful guide. 29 C.F.R. ¶541.700(b) (April 23, 2004). Here, the EMS Captains spend 99.66% of the time performing *non-exempt work*, and any exempt work is of little relevance to the Department's

business.² Because the EMS Captains' primary duty is emergency response and because the City cannot prove that their primary duty is exempt work, the highly compensated exemption does not apply pursuant to 29 C.F.R. §541.3(b) and 29 C.F.R. §541.601. As such, the Court should grant plaintiffs' motion for partial summary judgment with respect to the City's liability for unpaid FLSA overtime for hours worked in excess of 40 hours in a workweek.

The City cannot avoid mandatory liquidated damages under 29 U.S.C. §260, nor can it avoid a third year of backpay liability for its willful or reckless acts under 29 U.S.C. §255(a). The City asserts that its acts were reasonable because it overpaid EMS Captains out of "generosity" for the time that it misclassified EMS Captains under 29 U.S.C. §207(k). Doc. No. 56 at 24-25. The City's "generosity" is only such if EMS Captains are exempt, which they are not, as evidenced by the City's decision to begin paying them overtime pay for hours in excess of 40 in a workweek in July 2015.

The City never came to any conclusion regarding the EMS Captains' exempt status, never paid the EMS Captains pursuant to the highly compensated exemption, and instead, ***knowingly*** misclassified them as partially exempt fire fighters under 29 U.S.C. §207(k) until July 2015. CSF 19, 112, 113. The City's acts were not objectively reasonable, and they were not in good faith. As a serial violator of the FLSA, the City's acts, in light of its negligible attempts to determine the day-to-day duties of the EMS Captains, were willful or reckless.

---

² EMS Captains may spend six to ten hours a year completing portions of annual evaluations (which have no impact on an employee's final rating). This work cannot be more valuable to the City than the EMS Captains' emergency response work, which, using the City's own data, is a ***daily*** duty. The City's attempt to amplify the number of hours spent on performance evaluations by arguing that EMS Captains "spend many hours during the year evaluating paramedic performance in the field" (Doc. No. 56 at p. 19) is unavailing. CSF 77.

## II. Argument

### A. EMS Captains Are First Responders

#### 1. The City Cannot Dispute that EMS Captains Are Automatically Dispatched as the First Wave of Responders

EMS Captains have no discretion to refuse to respond when dispatched, and must respond no matter what they are doing. *Compare* Doc. No. 49-22, Ex. 19, 69 Fed. Reg. 22,122 at 22,130 (April 23, 2004) *with* CSF 33-35. The only reason the EMS Captains sleep at the fire station is to respond to emergencies. CSF 60. EMS Captains are not dispatched to emergencies in order to simply evaluate paramedics for field audits. CSF 77. It is common sense that emergency response is their most important duty. *See Morrison*, 2016 U.S. App. LEXIS 11211 (4th Cir., June 21, 2016) at *34 ("Primary duty" has a common-sense meaning under the Part 541 regulations – 'the principal, main, major or most important duty that the employee performs.'"). *See also* 29 C.F.R. § 541.700(a); *Morrison* at *25-26 ("[w]hatever the precise importance of the Captains' non-firefighting duties -- the evaluations, the disciplinary reports, the annual conforming changes to station policies -- it is clear that fighting fires is the more important part of the job. When an emergency call comes in, it takes priority, and the Captains do not have discretion to decline to respond.").

EMS Captains respond to dangerous incidents, including multi-casualty incidents, structure fires, and shootings (CSF 46); enter areas on scene designated as "I.D.L.H.," or "Immediate Danger Life Hazard" areas (P-CSF 150); carry and don the same gear as paramedics (CSF 39, 40); are injured performing their first responder work (CSF 42, P-CSF 165); perform hands-on work and, as licensed paramedics, have a duty to provide medical aid. (CSF 47, 53-55).

The City fails to point to any facts to support its contention that the EMS Captains manage or oversee the EMS subdivision (Doc. No. 56 at p. 17). This is because the EMS Captains do *not* manage or oversee the EMS subdivision. They

5

are not responsible for staffing or hiring, do not assign work, do not determine shifts or overtime, do not prepare budgets or commit the department to contracts or other obligations. CSF 25-30. Instead, as first responders responding to emergencies, the EMS Captains carry out the day-to-day affairs of the EMS subdivision, which is "[t]he delivery of life saving emergency medical services." CSF 146; *see Calderon v. Geico Gen. Ins. Co.*, 809 F.3d 111, 124 (4th Cir. 2015) ("critical focus [of the Administrative exemption] . . . remains whether an employee's duties involve the running of a business as opposed to the mere day-to-day carrying out of the business's affairs.") (citations omitted).

## 2. The City Misinterprets the First Responder Regulation and the EMS Captains' Job Duties

Defendant mischaracterizes plaintiffs' argument. Doc. No. 56 at p. 13. Plaintiffs do not assert that *every* LAFD employee who responds to an emergency is FLSA non-exempt as a first responder. Instead, plaintiffs argue that management-like tasks undertaken in conjunction with, or directly related to, first responder duties do not turn a first responder into an exempt employee. *Morrison*, 2016 U.S. App. LEXIS 11211 at *20, citing *Mullins v. City of New York*, 653 F.3d 104 at 115 (2d Cir. 2011); *see also* Doc. 49-1 at pp.7-8. Plaintiffs do not dispute that Fire Chiefs, Deputy Chiefs, and other high-ranking officers whose job it is to actually *manage* the Department, by hiring, transferring, or firing employees, setting budgets, and determining Department goals, are exempt, even if from time to time they are dispatched. Such high-ranking officers seldom respond, and when they respond, they direct operations by taking charge of scenes, including determining if additional resources are necessary. *See Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012); *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, at 1243, 1250 (D.N.M. 2013). Plaintiffs have brought personnel-related complaints to such high-level managing officials. P-CSF 135.

But plaintiffs are not those high-ranking officers. Instead, plaintiffs are Captain-level paramedics (at least *five ranks below* the Fire Chief) who respond to emergency incidents several times a day, as often as some paramedics, and report to Incident Commanders on-scene. CSF 57; P-CSF 172, 176, 190. EMS Captains are never Incident Commanders. P-CSF 161.

The primary role of the EMS Captain on a scene is to ensure that treatment, transport, and triage of victims or patients is administered in accordance with the rules and regulations governing them as paramedics. CSF 47. The City without citation argues that this is an admission that the EMS Captains are exempt managers. Doc. No. 56 at p. 12. Rather, such emergency medical response is non-exempt work, as it is the responsibility of *all* paramedics responding to incidents to ensure that treatment, transport, and triage of victims is administered in accordance with the rules and regulations. Such work is non-exempt under the DOL's own interpretation of 29 C.F.R. §541.3(b).

In its incorrect interpretation of 29 C.F.R. 541.3(b), defendant makes the same faulty argument for which the Second Circuit criticized the district court in *Mullins*. Defendant asserts that the Department of Labor did not intend to depart from "*the* established case law." Doc. No. 56 at p. 12. (emphasis supplied). But just as the DOL pointed out in its amicus brief, and as the Second Circuit determined in *Mullins*, such analysis ignores the definite article "this." *Mullins*, 653 F.3d at 118.

The Preamble recognizes that "[m]ost of the courts facing this issue have held that . . . paramedics and EMTs . . . are not exempt because they usually cannot meet the requirements for exemption as executive or administrative employees." 69 Fed. Reg. 22,122 at 22,129. DOL goes on to describe cases in which public safety employees including those at the rank of Captain were held to be FLSA non-exempt. For example, DOL cites with approval, *Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285, 1288 (10th Cir. 1994) as a case where "fire department captains were not exempt executives because they were not in charge

of most fire scenes; had no authority to call additional personnel to a fire scene; did not set work schedules; [and] participated in all the routine manual station duties[.]." *Id*. DOL also cited with approval [Reich v. State of New York, 3 F.3d 581](), 585-87 (2d Cir. 1993) where police officers were non-exempt because their primary duty was conducting investigations and not administering the affairs of the department itself. *Id*. After citing cases in which the claimed exemptions did ***not*** apply, DOL stated that it "has no intention to depart from ***this*** established case law." *Id*. (emphasis added). In using the definite article "this" the DOL was referring case law in which public safety workers were held to be non-exempt.

As the DOL continued:

> Rather, for the first time, the Department intends to make clear . . . that such . . . paramedics, EMTs and other first responders are entitled to overtime pay. Police sergeants, for example, are entitled to overtime pay even if they direct the work of other police officers because their primary duty is not management or directly related to management or general business operations[.]

*Id.*[3]

Defendant misleads the Court by citing ***any*** case in the Preamble as if the DOL had ratified that particular case. Doc. No. 56 at p. 12. The DOL does not cite with approval the same the cases that defendant relies on. Instead, the cases defendant relies on appear in a list of cases showing the ***exception*** to the rule that public safety personnel whose primary duty is emergency response, no matter their rank or pay level, are covered by the FLSA. The exception is for "high-level police

---

[3] DOL specifically goes on to state that public safety employees, including paramedics, "also cannot qualify as exempt under the highly compensated test in final section 541.601 because their primary duty does not include "office or non-manual work." *Id*.

8

and fire officials" whose primary duty is management. For example, *Smith v. Jackson*, 954 F.2d 296 (5th Cir. 1992) is easily distinguishable because in *Smith*, the plaintiffs were district chiefs and battalion chiefs, some of the highest ranking officers, and when they arrived on a scene, there were "in charge." *Smith*, 954 F.3d at 299.

### 3. Relative Frequency of Dispatch is Not Relevant, and the City's Dispatch Data Offers a Misleading Comparison

The City advances a specious and irrelevant statistical comparison, comparing a single EMS Captain position to up to 14 rescue ambulances in a battalion, combined. The data, to the extent that it is relevant or admissible, actually shows that single EMS Captains respond as many times as some single rescue ambulances, and in some cases more. *Compare* Doc. No. 56-10 at p. 29 *with* Doc. No. 56-10 at p. 31. The same data shows a large variation in response frequency even between rescue ambulances. *See id*. at p. 31. The City cannot argue that paramedics staffing a rescue ambulance that responds less frequently than others should be treated differently under the FLSA, and the same argument also fails when applied to EMS Captains.

This is because the relative frequency of dispatch or time spent responding is not the key consideration. In *Morrison*, EMS Supervisors spent between 58 and 70 minutes responding to emergencies per 24-hour shift; those EMS Supervisors were still FLSA non-exempt first responders because that emergency response work was their most important duty. *See* Doc. No. 49-1 at p. 17-18; Doc. No. 49-24 at p. 39.

Even if relative frequency was relevant, the City wrongly states that EMS Captains respond "once or twice a day." [4] Doc. No. 56 at p. 17. This imprecise

---

[4] Responding once or twice a day to serious emergency incidents, at which there may be multiple patients to be treated by rescue personnel on-scene, including the EMS Captains, is nothing to be belittled, and is the EMS Captains' primary duty.

9

statement appears to be based on emergency responses for one battalion. EMS Captains, however, respond to incidents for two battalions. CSF 31, 131, 132. For example, using the City's data, a 24-hour EMS Captain responds to emergency dispatches for Battalion 13 and for Battalion 6 when a 10-hour EMS Captain is not on duty. CSF 131, 132, P-CSF 173-176. In 2012, EMS Captains purportedly responded to 1608 incidents in Battalion 13, and 722 incidents in Battalion 6. Doc. No. 56-10 at p. 30. Based on the City's data, then, the Battalion 13 EMS Captain likely responded to over 2,000 incidents in 2012, approximately 5.5 times a day, more than many of the rescue ambulances in the Department.

### B. EMS Captains Do Not Perform Exempt Managerial Tasks

#### 1. Tasks that Could be Colloquially Referred to as Managerial are Non-exempt when Related to Emergency Response

Several tasks that the EMS Captains perform, including fact-finding, training, and restocking, that the City alleges to be exempt management work, are in fact non-exempt work related to first response. *See Morrison*, 2016 App. LEXIS at *30, n.8 ("non-supervisory duties that relate to ensuring operational readiness for first response also are non-exempt under the relevant regulations, even if they might be described colloquially as 'management'"); *Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 604 (E.D. Tenn. 2013) (explaining that conducting training and assuring a constant state of preparedness directly relates to regular front line duties and are therefore non-exempt work).

#### 2. Restocking Requires Extensive Driving and Walking, and is Manual Work

The City's argument is especially weak on the issue of the EMS Captains' restocking duties. The City makes a poor attempt to explain away its prior, honest, advice that restocking work is non-exempt. The City argues that because its conclusion was in a draft legal opinion, the City's outside attorneys *could* have

changed their minds. Doc. No. 56 at p. 20. ("The language *could* have been removed because 'restocking' was deemed exempt work.") (emphasis added).

First, the City is wrong. The language regarding restocking narcotics being non-exempt work appeared in a January 11, 2012 draft letter, and remained in a March 12, 2012 draft. P-CSF 241. The March 12, 2012 draft only contained additional comments from the City.[5] P-CSF 241. The March 12, 2012 draft was the last draft the City saw. *Id*. The very same lawyers representing the City in this lawsuit drafted those letters. *See* Doc. No. 28, Declaration of Lead Counsel and P-CSF 241. Yet, the City's only response to the admission that restocking work is non-exempt is that the advice *could have* been removed in a later draft. Such a conjecture makes no sense. More likely, the language was removed because such extensive time spent performing non-exempt narcotics delivery is yet another death knell to the City's defense. If anything, defendant's argument should give rise to an inference that the City understood and ignored its culpability.

Defendant's reliance on *Miller v. Farmers Ins. Exch.* 481 F.3d 1119 (9th Cir. 2007) is misplaced. The plaintiffs in *Miller* were claims adjusters who, unlike the EMS Captains here, made decisions "directly related to management policies or general business operations" and were directly covered by the administrative exemption, which contemplated claims adjusters as exempt. *Miller v. Farmers Ins. Exch.*, 481 F.3d 1119, 1128 (9th Cir. 2007). The *Miller* court never needed to address whether the driving time by the claims adjusters was non-exempt work.

---

[5] While there was a draft letter dated January 23, 2014, the City's attorney admitted that this draft was merely a copy of a previous letter, and was never sent to the City. CSF 241. The attorneys never delivered a final draft. *Id*.

### C. The City's Cannot Avoid Liquidated Damages or a Third Year of Liability With Its Advice of Counsel Defense

The facts show that the City cannot meet its burden to show good faith or objective reasonableness to avoid mandatory liquidated damages. If the City did review dispatch data as it claims to have done, it produced no studies and no written analyses, and if such analysis was anything similar to Captain Everett's Declaration, its analysis was flawed. *See* supra at Section II.A.3.

The City's only attempt to demonstrate good faith is to assert that it communicated with legal counsel. Doc. No. 56 at 22-23. This argument fails as a matter of law because the City did not disclose material facts to its attorneys, the attorneys never provided a conclusion regarding the highly compensated exemption, and the City did not rely on any advice it did receive. *See* CSF 85-87, 90-107. *United States v. Bush*, 626 F.3d 527, 539 (10th Cir. 2010). The City even acknowledged that more investigation was necessary. CSF 110. Yet there is no evidence of any further investigation.

The City admits that its counsel never provided it with a final opinion on the EMS Captains' exempt status, and no document exists concluding that the EMS Captains were subject to the highly compensated exemption. CSF 112, 113. The City's *ipse dixit* statement that it concluded EMS Captains were exempt as highly compensated employees is insufficient to avoid mandatory liquidated damages. For the same reason, and because the City is a serial violator of the FLSA, the City cannot avoid a third year of liability.

### III. Conclusion

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion for partial summary judgment as to the issue of liability. Plaintiffs also respectfully request that the Court grant their motion for partial summary judgment as to liquidated damages and make-whole relief for the three-year period for recovering their unlawfully withheld overtime compensation.

12

Dated: September 2, 2016

        Respectfully Submitted,

        /s/ Molly A. Elkin

        THOMAS A. WOODLEY
        MOLLY A. ELKIN
        WILLIAM W. LI
        taw@wmlaborlaw.com
        mae@wmlaborlaw.com
        wwl@wmlaborlaw.com
        WOODLEY & McGILLIVARY
        1101 VERMONT AVE, N.W.
        SUITE 1000
        WASHINGTON, DC 20005
        Telephone: (202) 833-8855
        Facsimile: (202) 452-1090

        LESTER G. OSTROV
        lostrov@lgolaw.com
        LESTER G. OSTROV,
        PROFESSIONAL CORP.
        5757 Wilshire Blvd.
        Penthouse 5
        Los Angeles, CA 90036
        Telephone: (323) 424-3440
        Facsimile: (323) 424-3468

        Counsel for Plaintiffs

## Certificate of Service

I certify that on September 2, 2016, the foregoing document was served on all following counsel of record through the Court's ECF filing system.

Brian P. Walter
bwalter@lcwlegal.com
Elizabeth Tom Arce
earce@lcwlegal.com
Joshua A. Goodman
jgoodman@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone: 310.981.2000
Facsimile: 310.337.0837

Michael N. Feuer, City Attorney
Wayne H. Song, Managing Assistant City Attorney
LOS ANGELES CITY ATTORNEY'S OFFICE
200 North Main Street, Room 700,
City Hall East
Los Angeles, CA 90012-4131
Telephone: (213) 978-8286
Facsimile: (213) 978-8216

/s/ Molly A. Elkin

Molly A. Elkin