**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.  **CV 15-7057-JFW (KLSx)** | Date:  September 22, 2016 |
| Title:  James Carson, et al. -v- City of Los Angeles | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):** **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY FOR FAILURE TO PAY FAIR LABOR STANDARDS ACT OVERTIME PAY TO EMS CAPTAINS, AND COMPENSATORY RELIEF [filed 8/22/16; Docket No. 49];**

**ORDER DENYING PLAINTIFFS' MOTION TO STRIKE 30(b)(6) ERRATA OF KEVIN NIDA [filed 8/22/16; Docket No. 50]; and**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [filed 8/22/16; Docket No. 51]**

On August 22, 2016, Plaintiffs James Carson, Anthony Castillo, Heywood Chang, Keith Douglass, Timothy Freeman, L. Scott Gibbons, Paul Gomez, Thomas Johnson, Gerard Joya, Erick Lauridsen, Chris Lewis, Tobi Perkins, Todd Porter, Colin Smith, Brent Spankroy, Michael Tobey, and Mary Zahyna (collectively, "Plaintiffs") filed a Motion for Partial Summary Judgment as to Defendant's Liability for Failure to Pay Fair Labor Standards Act Overtime Pay to EMS Captains, and Compensatory Relief ("Motion for Partial Summary Judgment").  On August 29, 2016, Defendant City of Los Angeles (the "City") filed its Opposition.  On September 2, 2016, Plaintiffs filed a Reply.  On August 22, 2016, Plaintiffs filed a Motion to Strike 30(b)(6) Errata of Kevin Nida ("Motion to Strike").  On August 29, 2016, the City filed its Opposition.  On September 2, 2016,

Plaintiffs filed a Reply. On August 22, 2016, the City filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Motion for Summary Judgment"). On August 29, 2016, Plaintiffs filed their Opposition. On September 3, 2016, the City filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matters appropriate for submission on the papers without oral argument. The matter were, therefore, removed from the Court's September 19, 2016 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**[1]

    **A.    Los Angeles Fire Department and Emergency Medical Services Captains**

Plaintiffs are seventeen current and former Emergency Medical Services ("EMS") Captains of the Los Angeles Fire Department (the "Department"). In order to provide fire and emergency medical services to the City, the Department has established fourteen battalions. Each battalion has between six and eleven fire stations, and the majority of the battalions have seven or eight fire stations. Each battalion covers 16 to 71 square miles. Each battalion has one EMS Captain on duty at all times.

There are two types of EMS Captains who work in the field: (1) those who work 24 hour shifts (also known as "platoon duty"); and (2) those who work 10 hour shifts four days a week between Monday and Friday from approximately 6:00 a.m. to 4:00 p.m. Of the fourteen battalions in the City, seven are staffed with EMS Captains who work 24 hour shifts, and seven are staffed with EMS Captains who work 10 hour shifts. When the 10 hour EMS Captains' shift ends at approximately 4:00 p.m., the seven 24 hour EMS Captains remain on duty. During the 14 hours that only 24 hour EMS Captains are on duty, each 24 hour EMS Captain is responsible for oversight of his or her assigned battalion as well as a designated partner battalion. When the battalions are paired together for purposes of 24 hour EMS Captain oversight, the combined battalions cover between 41 and 115 square miles.

During their shifts, EMS Captains are assigned emergency response duties and equipment and narcotics resupply duty for two battalions, or approximately 14 to 16 fire stations.[2] EMS Captains are assigned to emergencies in accordance with a dispatch algorithm that determines when and where they are dispatched. The EMS Captain's response is mandatory, and when dispatched, EMS Captains must respond to the incident in an emergent mode (*i.e.*, with lights and sirens) unless advised by the dispatcher to respond in a non-emergent mode.

---

[1] The facts in this case are largely undisputed. To the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

[2] These duties require EMS Captains to maintain a certain level of physical fitness and also expose EMS Captains to significant risk of physical harm while responding to calls. In addition, EMS Captains wear protective gear when responding to incidents, including protective masks, turnout gear, and/or bulletproof vests.

After arriving on the scene of an emergency, EMS Captains, as licensed paramedics, direct other paramedics and EMTs on scene in providing triage, treatment, and transportation of patients in accordance with the Department's policies and procedures. When not responding to emergencies, EMS Captains spend the majority of their time (other than sleep time) restocking ambulances in the field with narcotics and other equipment. Both responding to emergencies and restocking ambulances require manual labor, including driving. EMS Captains drive anywhere from 50 to over 100 miles per 24-hour shift.

In addition, EMS Captains are responsible for conducting a part of the annual evaluation for paramedics, relating to their medical skills. EMS Captains spend between six and ten hours per year on this task. However, EMS Captains do not have the authority to determine the overall annual rating of the employee. Instead, the Station Commander, who is the employee's supervisor, determines the overall annual rating.

When not on the scene of an emergency, EMS Captains are not responsible for supervising or managing Department personnel or making management decisions. For example, EMS Captains are not responsible for granting leave and vacation time to any of the Department's employees. EMS Captains have no role in hiring or terminating employees, nor do they make hiring or firing recommendations. In addition, EMS Captains do not make promotion or demotion recommendations, and they do not play any role in the promotion process. EMS Captains do not set the budget for the Department or determine the long or short term objectives of the Department.

Plaintiffs routinely work more than forty hours in a week. For example, in a 27-day cycle, an EMS Captain typically works nine 24-hour shifts. Prior to July 27, 2015, the EMS Captains were paid pursuant to 29 U.S.C. §207(k) as partially exempt fire suppression employees, and were paid overtime only after working 204 hours in a 27-day cycle. On July 27, 2015, the City announced that, beginning June 28, 2015, EMS Captains would be paid overtime at time and a half for hours worked over 40 hours in a workweek.

### B. Procedural Background

On September 4, 2016, Plaintiffs filed a Complaint for Declaratory Judgment, Compensation and Other Relief ("Complaint") against the City, alleging that the City violated Section 7(a) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207(a), by failing to pay overtime for all the hours worked by Plaintiffs in excess of forty hours in a workweek. In their Complaint, Plaintiffs seek recovery of all allegedly unpaid overtime for hours worked in excess of forty hours in a workweek for the time period between September 4, 2012 and June 27, 2015.

In its Motion for Summary Judgment, the City argues that, for the time period between September 4, 2012 and June 27, 2015, the City was not required to pay Plaintiffs overtime because they were exempt employees pursuant to the highly compensated exemption. 29 C.F.R. 541.601. In addition, the City argues that even if the City erred in not paying Plaintiffs overtime as non-exempt employees under the FLSA, this fact alone does not establish that the City willfully violated the FLSA and, thus, Plaintiffs are not entitled to a third year of statutory compensatory backpay damages. The City also argues that it acted in good faith in its attempts to comply with the FLSA, and this good faith precludes any award of liquidated damages.

In their Motion for Partial Summary Judgment, Plaintiffs argue that they are non-exempt employees under the FLSA and that the highly compensated exemption does not apply to them. In addition, Plaintiffs argue that no reasonable juror could find that the City met its burden to demonstrate that failing to classify EMS Captains as non-exempt employees and failing to pay them overtime were decisions made in good faith and were objectively reasonable. Therefore, Plaintiffs argue that they are entitled to liquidated damages. Plaintiffs also argue that the City's failure to classify EMS Captains as non-exempt employees and failing to pay them overtime was willful and/or reckless, and, therefore, Plaintiffs are entitled to a third year of statutory compensatory backpay damages.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

### III. Discussion

#### A. The Fair Labor Standards Act

The FLSA, 29 U.S.C. §§ 201–219, is "remedial and humanitarian in purpose" reflecting an intent by Congress to protect broadly the "rights of those who toil." *Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). Consistent with that purpose, courts are to construe the FLSA liberally, "recognizing that broad coverage is essential" to accomplish the statute's goals. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985); see *Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) ("[T]he Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner'") (*quoting Tennessee Coal*, 321 U.S. at 597). Among the protections the FLSA provides employees is overtime pay, or the right to be paid at time and a half for work above the statutory limit, generally 40 hours per week. *See* 29 U.S.C. § 207. Specifically, section 7(a)(1) of the Act provides that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

There are several exemptions to this requirement, including the so-called "white collar" or "highly compensated" exemption for workers "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). However, FLSA exemptions "are to be 'narrowly construed against the employers seeking to assert them,'" and applied only in instances "plainly and unmistakably within the exemptions' terms and spirit." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 (4th Cir. 2009) (alterations omitted) (*quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The Department of Labor ("DOL") has promulgated regulations interpreting the FLSA's "highly compensated" exemption at issue in this case. Under the DOL regulations, an "employee employed in a bona fide executive capacity" is one who earns at least $455 per week, has authority over hiring and firing, routinely supervises at least two other employees, and whose "primary duty is management of the enterprise in which the employee is employed." 29 C.F.R. § 541.100. Determination that an employee is employed in a bona fide administrative capacity similarly turns on a management-related primary duty analysis: An "employee employed in a bona fide administrative capacity" is one who, in addition to earning at least $455 per week and exercising discretion on significant matters, has as a "primary duty" the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200.

In 2004, DOL proposed changes to its "Part 541" regulations governing the white collar or highly compensated exemption, creating concerns that "first responders" and "manual laborers"

would become exempt employees and lose their right to overtime pay. *See* U.S. Dep't of Labor, *Wage & Hour Div., Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22,122, 22,129 (Apr. 23, 2004) ("Preamble"). In response, DOL promulgated a new regulation, 29 C.F.R. § 541.3, clarifying the scope of the exemption as applied to blue collar workers and first responders. Preamble at 22,128–29. Subsection (a) of the new regulation provides that the Part 541 exemptions "do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy." 29 C.F.R. § 541.3(a). Subsection (b) is the "first responder regulation," and provides in its first part that the Part 541 exemptions "do not apply to . . . fire fighters" and other first responders, "regardless of rank or pay level." *Id.* at § 541.3(b)(1). In its second and third parts, the regulation explains why the exemption does not apply: "Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise . . . as required under § 541.100" (*id.* at § 541.3(b)(2)), and "[s]uch employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer . . . as required under § 541.200" (*id.* at § 541.3(b)(3)).

## B. The Highly Compensated Exemption Does Not Apply to Plaintiffs.

The parties agree that the FLSA requires employers to pay employees overtime pay at one-and one-half times the regular rate for all hours worked in excess of forty hours a week. 29 U.S.C. § 207(a)(1). It is undisputed that between September 4, 2012, and June 27, 2015 the City paid Plaintiffs based on its determination that they were partially exempt as fire suppression employees under 29 U.S.C. § 207(k). As a result, during that time period, the City only paid Plaintiffs overtime at the rate of one and one-half times their regular rate of pay when they worked in excess of 204 hours in a 27-day period, or over 53 hours in a workweek. However, commencing on June 28, 2015, the City changed the compensation structure for Plaintiffs even though their duties had not changed and began paying Plaintiffs overtime pay when they worked in excess of 40 hours a week. Although the City no longer claims that Plaintiffs are subject to the partial exemption under 29 U.S.C. § 207(k), it now claims that, for the period between September 4, 2012 and June 27, 2015 that Plaintiffs were not entitled to overtime under the FLSA because they were exempt under the highly compensated exemption. 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.601.

> To be exempt under the highly compensated exemption, an employee must:
>
> (1) have a total annual compensation of at least $100,000; and
> (2) customarily and regularly perform any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee identified in [29 CFR 541.100 et seq., 29 CFR 541.200 et seq., and 29 CFR 541.300 et seq.];
> (3) the exemption applies only to employees whose primary duty includes performing office or non-manual work.

*See* 29 C.F.R §541.601. In this case, the parties do not dispute that Plaintiffs' total annual compensation is at least $100,000.

### 1. The DOL Clarified the Highly Compensated Exemption Does not Apply to First Responders That Work in the Field.

As discussed above, in 2004, the DOL adopted new regulations that revised and clarified the exemptions in 29 U.S.C. §213(a)(1), and, thus, described how the exemption applied to first responders and clarified the primary duty standard used to determine the applicability of the exemption. 29 C.F.R. §541.3(b). In the Preamble, the Secretary of Labor explained:

> The current regulations do not explicitly address the exempt status of police officers, fire fighters, paramedics or EMTs. . . .[T]he Department intends to make clear . . . that such . . . first responders are entitled to overtime pay.

Ex. 19 at 69 Fed. Reg. 22,122, at 22,129 (Apr. 23, 2004). 29 C.F.R. §541.3(b) specifically provides that:

> The Section 13(a)(1) exemptions do not apply to . . . paramedics, emergency medical technicians, ambulance personnel, rescue workers, and other similar employees, regardless of rank or pay level, who perform work such as rescuing fire, crime or accident victims; . . . or other similar work.

29 C.F.R. §541.3(b) (emphasis added). In addition, the Preamble clarifies that first responders "cannot qualify as exempt under the highly compensated test" because first responders are not employees whose primary duty includes performing office or non-manual work. Ex. 19 at 69 Fed. Reg. 22,122 at 22,129. Moreover, the DOL's clarification of the primary duty test to first responders included an example: "a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not [an exempt executive] merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire." 29 C.F.R. 541.3(b)(2). Thus, management-like tasks undertaken in conjunction with, or directly related to, first responder duties do not turn a first responder into an exempt employee. *See, e.g., Morrison v. County of Fairfax, VA*, 826 F.3d 758 (2016). As the court in *Morrison* explained:

> to the extent such management or direction takes the form of supervision, particularly supervision related to first response – 'apportioning work' among subordinates, 'determining the techniques and personnel to be used' in connection with first response, 'reallocating [subordinates'] activities,' and the like -- it is not exempt 'management' activity under the regulatory framework here.

*Morrison*, 826 F.3d at 771 n. 8. "Even read narrowly, the example provided in subsection (a)(2) of the first responder regulation precludes . . . classifying as 'management' the supervision of employees in the course of activities directly related to first response duties." *Id.* ("[U]nder the first responder regulation, tasks performed as part of or in furtherance of the Captains' first response duties are not deemed 'management' and will not render the Captains exempt from overtime pay requirements").

Accordingly, the first responder regulation precludes any finding that emergency response work in the field, including directing the work of others performing that emergency response work, is exempt work. However, the DOL interpretation of the first responder regulation does not replace

or alter the primary duty test. As the Court in *Mullins v. City of New York*, 653 F3d 104 (2d Cir. 2011), held, rather than replacing the primary duty test, the first responder regulation applies in conjunction with the primary duty test. In adopting the Secretary of Labor's rationale, the Second Circuit concluded that courts must consider whether the management and supervisory activities performed by the categories of employees listed in Section 541.3(b) are undertaken as part of the employees' primary field emergency response duties. *Id.* at 115.

### 2. Plaintiffs' Primary Duty is Emergency Response, Which Is Not Exempt Work.

For purposes of the highly compensated exemption of the FLSA, a "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a); *see also Morrison*, 826 F.3d at 772 (holding that "primary duty" has a common-sense meaning under the Part 541 regulations). To qualify for the highly compensated exemption, "an employee's 'primary duty' must be the performance of exempt work. 29 C.F.R. § 541.700(a).

The DOL lists four non-exhaustive factors that should be considered in determining an employee's "primary duty" under the highly compensated exemption: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).

The first and second factors weigh heavily in favor of a finding that Plaintiffs' primary job duty consists of non-exempt emergency response work because their emergency response duties outweigh any exempt work in terms of relative importance, and the amount of time spent performing exempt work is, at most, minimal. That Plaintiffs' primary job duty consists of emergency response work is demonstrated by the fact that Plaintiffs must respond to all emergency calls to which they are dispatched. In addition, Plaintiffs sleep at the fire station while on duty so that they, like other first responders, can respond to those emergencies as quickly and efficiently as possible because responding to emergencies is the single most important part of Plaintiffs' job. *Morrison*, 826 F.3d at 769 (holding that "[w]hatever the precise importance of the Captains' non-firefighting duties – the evaluations, the disciplinary reports, the annual conforming changes to station policies – it is clear that fighting fires is the more important part of the job. When an emergency call comes in, it take priority, and the Captains do not have discretion to decline to respond").

Once on the scene of an emergency, Plaintiffs are responsible for supervising and managing the medical component of that emergency call[3], which involves supervising the paramedics and EMTs to ensure that they are administering proper care, interfacing with multiple rescue units, and determining whether a scene can be "cleared."[4] Although Plaintiffs manage on

---

[3] On the scene of an emergency, Plaintiffs have the authority to give direct orders to paramedics and EMTs related to medical issues. Plaintiffs report to the Incident Commander.

[4] An EMS Captain determines that a scene is "clear" after interfacing with each rescue unit to ensure that all patients have been properly treated and transported.

scene paramedics and EMTs, they generally do not provide hands on care to patients because they are rarely the first paramedics on the scene. The City's argument that Plaintiffs' on scene duties are managerial is unpersuasive. The first responder regulation specifically states that an individual who directs the work of other employees at an emergency scene will not automatically be transformed into a manager. *See* 29 C.F.R. § 541.3(b)(2). Accordingly, the work performed by Plaintiffs on the scene of an emergency qualifies as non-exempt work. *See, e.g., Morrison*, 826 F.3d at 771 n. 8 (holding that supervision related to first response, such as apportioning work among subordinates, determining the techniques and personnel to be used in connection with first response, reallocating subordinates' activities, and the like, is not exempt "management" activity under the FLSA regulatory framework).

When not responding to emergency calls, Plaintiffs perform a variety of routine duties, including restocking ambulances with narcotics, training paramedics on skills and equipment necessary for emergency response, occasionally participating in factfinding investigations of employee misconduct, and completing a portion of a paramedic's annual evaluation form.[5] Thus, a substantial part of Plaintiffs' other duties consist of non-exempt work directly related to emergency response. *Id.* (holding that "non-supervisory duties that relate to ensuring operational readiness for first response also are non-exempt under the relevant regulations, even if they might be described colloquially as 'management'"); *Barrows v. City of Chattanooga*, 944 F.Supp. 2d 596, 604 (E.D. Tenn. 2013) (holding that managerial duties such as conducting training and assuring a constant state of preparedness relates directly to regular front line duties and, therefore, are non-exempt work). In this case, Plaintiffs' duties do not entail "management" decisions. For example, they are not responsible for staffing or hiring, do not assign work, determine shifts or overtime, prepare budgets or commit the Department to contracts or other obligations.

Because Plaintiffs spend the majority of their time performing non-exempt duties and spend a minuscule amount of time, if any, performing work that could be construed as exempt, the Court concludes that no reasonable jury could find that Plaintiffs' primary duty is anything other than emergency response and, therefore, Plaintiffs do not qualify for the highly compensated exemption under 29 C.F.R. 541.700(a).[6] *Morrison*, 826 F.2d at 773 (concluding that no reasonable jury could find that EMS Supervisors – with jobs substantially similar to those of Plaintiffs – have anything other than first response as their primary duty); *see also Mullins*, 653 F.3d at 118-19 ("[U]nder the Secretary's interpretation of the first responder regulation and the definition of 'primary duty,' we necessarily conclude that the principal benefit that sergeants confer to the NYPD is their

---

[5] With respect to restocking narcotics, Plaintiffs hand the narcotics to the paramedics for each ambulance and ensure that the proper paperwork is complete. Restocking narcotics is an important task for Plaintiffs, because obtaining and distributing narcotics requires compliance with strict legal requirements and requires careful attention to proper completion of the paperwork.

[6] Furthermore, the nature of their work requires that Plaintiffs maintain their physical fitness, devoting up to two hours each shift to physical fitness. Plaintiffs engage in strenuous, repetitive activities, both on-scene and in driving to a scene with lights and sirens, that expose them to risk of harm or injury. As the DOL noted in the Preamble, public safety officers whose work requires the use of significant physical skill or energy do not perform "office or non-manual work" as their primary duty. 69 FR 22122 at 22129-22130 (citing cases in which non-exempt employees' positions required significant physical skill and energy, and exposed the employees to danger).

performance of law enforcement duties in the field and concomitant supervision of lower-ranking officers while performing such duties. Since that work is considered 'non-exempt' under the first responder regulation, the limited amount of exempt management duties undertaken by sergeants is insufficient to render their primary duty 'management').

The third factor – the relative freedom from direct supervision – also weighs in favor of a finding that Plaintiffs' primary job duty involves non-exempt work.[7] Plaintiffs are part of a paramilitary organization, are among the lowest ranking members of the department, and report to and take orders from Battalion Chiefs.[8] *See, e.g., Morrison*, 826 F.3d at 771 ("One Captain testified, for instance, that '[a]ny good captain will tell you he doesn't have an opinion about anything. He has whatever opinion the fire chief tells him it is'"). Plaintiffs spend much of the day waiting to be told where to respond and which ambulances need restocking. After they arrive on the scene of an emergency, Plaintiffs report to the Incident Commander and perform any tasks that may be assigned by the Incident Commander.

Because Plaintiff's primary duty involves emergency response and not office work or non-manual work, the Court concludes that the highly compensated exemption of the FLSA does not apply to Plaintiffs. *Morrison*, 826 F.3d at 773 (reversing grant of summary judgment in favor of the defendant, and granting plaintiffs summary judgment, specifically stating that because the defendant had not "shown that the [plaintiffs'] primary duty is anything other than . . . emergency aid," and, thus, the defendant could not "show that the Captains fall within the highly compensated exemption"). Accordingly, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** and the City's Motion for Summary Judgment is **DENIED** with respect to the applicability of the highly compensated exemption to Plaintiffs.

### C. The City is Entitled to Summary Judgment With Respect to Liquidated Damages and a Third Year of Statutory Compensatory Backpay Damages Based on Willfulness.

Plaintiffs argue that no reasonable factfinder could find that the City has met its burden to demonstrate that its non-payment of overtime and classification of EMS Captains was made in subjective good faith and was objectively reasonable, and, thus, Plaintiffs are entitled to mandatory liquidated damages. In addition, Plaintiffs claim that the City's violation of the FLSA by failing to classify Plaintiffs as non-exempt employees and failing to pay them overtime was willful and/or reckless, and, therefore, Plaintiffs are entitled to a three year statute of limitation, which allows

---

[7] The fourth factor does not apply in this case. As the DOL noted, first responders, "regardless of rank or pay," are not exempt under the highly compensated exemption. 29 C.F.R. §541.3(b) (April 23, 2004). *See, e.g., Mullins*, 653 F.3d at 119 (rejecting the idea that differences in salary was a legitimate reason to conclude that the plaintiffs' primary duty was management when "'regardless of rank or pay level' activities that form part of front-line law enforcement do not constitute 'management.'").

[8] EMS Captains report to Battalion Chiefs, who in turn report to Assistant Chiefs, who report to Chief Deputies, who report to Deputy Chiefs, who report to the Fire Chief. No Department employee reports to EMS Captains.

Plaintiffs to receive a third year of statutory compensatory backpay damages. The City argues that its decisions with respect to Plaintiffs' overtime pay were in good faith, objectively reasonable, and neither willful nor reckless.

### 1. Plaintiffs Cannot Demonstrate that the City Willfully Violated the FLSA.

Plaintiffs have the burden of proving a "willful" violation of the FLSA. If a willful violation is established, a three year, rather than a two year, statute of limitations applies. 29 U.S.C. § 255(a). A "willful" violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *SEIU v. County of San Diego*, 60 F.3d 1346 (9th Cir. 1994). A plaintiff must demonstrate that the employer recklessly disregarded the possibility that it was violating the FLSA. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). Simple negligence is not enough to prove "willfulness." *McLaughlin*, 486 U.S. at 133. If an employer takes "affirmative action to ensure compliance," then the employer cannot be found to have acted willfully.

In this case, despite Plaintiffs' arguments to the contrary, Plaintiffs have failed to demonstrate that the City willfully violated the FLSA because they have failed to present any evidence that the City recklessly or intentionally refused to pay them overtime. In fact, in 2011, the City created a working group, comprised of Department command staff and legal counsel, to evaluate a variety of aspects of the Department's FLSA compliance, including whether EMS Captains were exempt under the FLSA. Prior to the creation of the working group, the Department classified many firefighters, including EMS Captains, as "engaged in fire protection" and, therefore, entered into labor agreements with the firefighter's labor union to pay them overtime pursuant to the partial overtime exemption under section 207(k) of the FLSA. The working group was formed to take a fresh look at all firefighters to see if they would still qualify for the Section 207(k) exemption in light of litigation over the issue brought by paramedics, dispatchers, and aeromedical technicians.

During numerous meetings, the working group analyzed whether the EMS Captain job description reflected the duties actually performed by EMS Captains. In addition to analyzing the FLSA's first responder regulations and the number, type, and frequency of calls where EMS Captains were dispatched, legal counsel consulted with individuals in the command staff who had knowledge of the duties of an EMS Captain in order to learn more about the daily tasks they performed. To assist with its analysis of these complex issues, the Department asked counsel to provide an opinion letter on a variety of FLSA issues, including an analysis of whether EMS Captains qualified as exempt under any section of the FLSA. Counsel provided an initial opinion letter on December 19, 2011, which advised that EMS Captains were not exempt under Section 207(k) but in the opinion of counsel were exempt under the highly compensated exemption. Although the Department and counsel exchanged several drafts, the opinion letter was never finalized and formally issued by counsel. As a result, after an extensive analysis with the assistance of very experienced counsel over the course of many years, the City ultimately concluded the EMS Captains did not qualify for the Section 207(k) exemption but did qualify for the

highly compensated exemption.[9]  The City's proactive efforts to determine the FLSA status of EMS Captains in a highly complex and ever-changing area of the law in no way demonstrates a reckless disregard for or a willful violation of the FLSA, even if those efforts ultimately reached the wrong conclusion regarding the FLSA status of EMS Captains.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is **DENIED** and the City's Motion for Summary Judgment is **GRANTED** with respect to the issue of a third year of statutory compensatory backpay damages based on willfulness.

### 2. The City Acted in Subjective Good Faith and in an Objectively Reasonable Manner.

An employer may establish a good faith defense by establishing that it subjectively intended to ascertain and follow the FLSA and that it had reasonable grounds for believing that its conduct complied with the Act.  29 U.S.C. § 260; *Local 246 Utility Workers' Union of America v. Southern Cal. Edison*, 83 F.3d 292, 297-298 (9th Cir. 1996).  Where an employer acts in good faith and takes a proactive approach to compliance, it will not be penalized even if its conclusions are ultimately incorrect.  *Boyd v. Bank of America Corp.*, 109 F.Supp.3d 1273, 1308-09 (C.D. Cal. 2015); *Nash v. Resources Inc.,* 982 F.Supp. 1427, 1436-37 (D. Or. 1997).

As discussed above, the City concluded that EMS Captains did not qualify for the Section 207(k) exemption but did qualify for the highly compensated exemption.  The City had a reasonable basis for its conclusion based on its extensive analysis of the daily tasks performed by the EMS Captains, the number, type, and frequency of calls on which they were dispatched, and the legal opinion of counsel.  Therefore, the Court concludes that the City made a good faith effort to comply with the FLSA and acted in an objectively reasonable manner by "actively endeavoring" to properly classify EMS Captains under the FLSA.  *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016) *citing Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (holding that an employer that shows that it "actively endeavored" to ensure FLSA compliance can satisfy the burden of good faith).

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is **DENIED** and the City's Motion for Summary Judgment is **GRANTED** with respect to the issues of liquidated damages based on the City's good faith and objective reasonableness.

## IV. Conclusion

For all the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**.  Plaintiff's Motion for Partial Summary Judgment is **GRANTED** with respect to the applicability of the highly compensated exemption to Plaintiffs and **DENIED** with respect to the issues of liquidated damages and a third year of statutory compensatory backpay

---

[9]  Although the City believed the EMS Captains were exempt from overtime as highly compensated employees, it chose to continue paying EMS Captains based on the Section 207(k) exemption until June 28, 2015 because it was the pay structure provided for in the labor agreement.

damages.  The City's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The City's Motion for Summary Judgment is **DENIED** with respect to the applicability of the highly compensated exemption to Plaintiffs and **GRANTED** with respect to the issues of liquidated damages and a third year of statutory compensatory backpay damages.  Plaintiffs' Motion to Strike is **DENIED as moot**.

    IT IS SO ORDERED.